Filed 5/10/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL TORRES,<br><br>        Defendant and Appellant. | A146958<br><br>(Alameda County<br>Super. Ct. No. H57417) |

A jury convicted defendant Miguel Angel Torres of one count of second degree robbery causing great bodily injury (Pen. Code, §§ 211, 12022.7, subd. (a)),[1] five counts of digital penetration (§ 289, subd. (a)(1)(A)), one count of sexual battery by restraint (§ 243.4, subd. (a)), and one count of forcible rape (§ 261, subd. (a)(2)). The trial court then found defendant had four prior convictions and sentenced him to eight consecutive 25-years-to-life sentences, for a total of 246 years to life.

On appeal, defendant contends: (1) the evidence was insufficient to support the great bodily injury enhancement as to the robbery count; (2) the trial court abused its discretion in admitting irrelevant and prejudicial evidence; (3) the prosecutor committed misconduct during closing argument; (4) the trial court improperly imposed a life term for sexual battery by restraint; (5) the trial court improperly imposed consecutive sentences for the digital penetration convictions; and (6) the trial court erred in failing to stay the sentence on the sexual battery conviction.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. A–C.

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

We affirm as to the first four issues, but conclude the trial court erred in ruling it was required under the Three Strikes law to impose consecutive sentences for the digital penetration and sexual battery convictions. As we discuss in the published portion of our opinion, in our view, the Three Strikes Reform Act of 2012 (commonly referred to as Proposition 36) largely left intact a sentencing court's limited discretion under the Three Strikes law to impose concurrent sentences for multiple felonies committed on the "same occasion" or arising from the "same set of operative facts," and therefore did not alter most of the long-established Three Strikes law sentencing rules set forth in *People v. Hendrix* (1997) 16 Cal.4th 508 (*Hendrix*).[2] We therefore remand for resentencing on these convictions and the sexual battery by restraint conviction and otherwise affirm the judgment.

## I. BACKGROUND

In the spring of 2014, then 19-year-old Jane Doe participated in a cultural night production at the college she was attending. Afterwards, she attended a cast party at a restaurant and stayed until between 11:30 p.m. and midnight. She left in her car by herself and drove to her apartment. Unbeknownst to Doe, defendant, also in a car, followed her home from the restaurant.

After Doe parked and began walking towards her apartment, she heard running behind her and "was struck in the back of [her] head." She felt pain and "blacked out for a couple of seconds." When she opened her eyes, she was face down on the ground.

Defendant was on top of and behind her in "sort of like in a spooning type of position," and was grabbing her breast. His hand covered her mouth, and he said, "Give me your bag, and everything will be okay," and "Don't scream or I'll shoot you." He then took Doe's purse off her shoulder and put it behind him, and began to touch her. He reached under her shirt and bra and touched her breast, and pulled her jeans down to her

---

[2] We publish this portion of our opinion because no published opinion to date has addressed the conflict within the Three Strikes law resulting from Proposition 36, which amended section 1170.12, subdivision (a)(7), but did not amend the formerly identical language of section 667, subdivision (c)(7).

upper thigh. He then alternated inserting his fingers into Doe's vagina and anus in an "in-and-out motion," "[m]ore than one time." Defendant pulled down his own pants and tried to put his erect penis inside her vagina. Doe could feel the pressure of the tip of his penis entering, but he "did not fully insert it inside"; he was thrusting "his penis against [her] vagina . . . lips." Crying, Doe asked defendant why he was doing this, and he told her to "shut up." At some point, he stopped thrusting with his penis and reinserted his fingers into her vagina and anus, with the same "in-and-out motion." Defendant did not ejaculate. When the assault stopped, he told Doe "You've been a good girl, you will get to see your family again." He then got up and said, "Don't turn around or I'll shoot you."

A witness who was at the apartment complex to pick up his girlfriend saw defendant struggling on the ground with a woman. Defendant then ran past him, got into a vehicle, and drove off.

Once Doe heard defendant's footsteps retreating, she got up and went to her apartment, and then went to her landlord's room and told her what had happened. The two woke up Doe's other roommate (the landlord's daughter) who called the police. When the police arrived, Doe provided a statement and accompanied them to the hospital. There, staff performed a sexual assault rape trauma examination. Doe told the physician's assistant who performed the exam that she had been " '[s]truck in [the] back of [the] head with [the] assailant's forearm' " and thought the defendant had a gun but did not see one. Doe stated she had pain in her left hand and forearm, as well as her right knee and elbow. She suffered multiple superficial abrasions, including an abrasion on the "external genitalia area," as well as tenderness to the posterior fourchette. The examiner stated the findings she made during the examination were consistent with the history Doe provided.

After the examination, Doe gave another statement to the police. She did not mention that she had "blacked out or that [she was] unconscious," but did in a statement she gave later in August. She also told her roommate that she "lost consciousness for a quick second."

3

Immediately after she got home from the hospital, Doe closed her Facebook account, which was under her actual name and contained photographs of herself.

The next morning, Doe cancelled her credit and debit cards and shared her account information with police. Her credit card company then released a fraud report to law enforcement, which showed that her credit card had been used in an attempt to make a purchase the day after the assault.

Multiple store surveillance cameras along the route Doe had taken to her apartment showed a car matching defendant's following behind.

Defendant was then arrested and his vehicle towed and searched. Officers found Doe's Mickey Mouse watch, a women's cosmetic powder puff, and a package of Rhino 7 pills, a sexual stamina enhancement. Police also seized defendant's cell phone and found pictures of Doe from her Facebook account, which defendant had saved to his cell phone the day after the assault. Detectives also took buccal swabs and fingernail swabs.

Steven Crotti, an expert in the area of "[f]orensic DNA analysis," testified he combined cuttings from two areas, which is common practice, and after traditional DNA typing failed, he forwarded the samples for Y-STR testing. Angela Meyers, also an expert in the area of "forensic DNA analysis," testified the Y-STR testing showed there were two male contributors to the sperm found in Doe's underwear. This included defendant's halotype, which is the same for all males in defendant's line.

A clerk from a nearby store recognized defendant from his prior purchases of Rhino 7 pills. The clerk testified defendant came into the store and tried to make another purchase of the pills with Doe's credit card, but the card was declined. Defendant then tried to purchase the pills with his own card. That was also declined. Finally, he paid for the pills in cash.

In jailhouse recordings, defendant admitted having Doe's wallet and asked a relative to remove items from his room and put them in the garage. When asked if any of the allegations were true, defendant replied "Yeah," but he denied hitting Doe or having a gun. He admitted using her credit cards. He also stated he had gotten Doe's pictures

4

from Facebook by searching the name from her credit card, and he asked a relative to report his cell phone as stolen so they could delete his history.

After a preliminary hearing, defendant was charged by information with one count of second degree robbery with an attached great bodily injury enhancement (§§ 211, 12022.7, subd. (a)—count 1), five counts of digital penetration (§ 289, subd. (a)(1)(A)— counts 2, 3, 4, 5, 8), one count of sexual battery by restraint (§ 243.4, subd. (a)—count 6), and one count of forcible rape (§ 261, subd. (a)(2)—count 7). The information also alleged four prior convictions and as to counts 2–5 and 7–8, that they were serious and violent felonies and require registration as a sex offender (§§ 667, subd. (c), 1192.7, subd. (c), 290). The jury found defendant guilty as charged, and the trial court found the prior convictions true.

## II. ANALYSIS

### A. *The Great Bodily Injury Finding*

Defendant contends "the momentary black out Doe suffered as she was stunned by the blow from behind was not a 'loss of consciousness' sufficient to sustain a finding of great bodily injury" under section 12022.7.

Section 12022.7 provides in pertinent part: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (§ 12022.7, subd. (a).) The statute defines " 'great bodily injury' " as a "significant or substantial physical injury." (§ 12022.7, subd. (f).)

" 'In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings,

5

reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." ' " (*People v. Cunningham* (2016) 244 Cal.App.4th 1049, 1053.)

Though section 12022.7, itself, provides no definition of "great bodily injury," the phrase is " ' "essentially equivalent" ' " to " 'serious bodily injury' " referred to in section 243, subdivision (f)(4). (*People v. Knoller* (2007) 41 Cal.4th 139, 143, fn. 2; *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149–1150; *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375.)

Section 243, subdivision (f)(4) defines "serious bodily injury" as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness. . . ." Therefore, a victim's loss of consciousness, in and of itself, may support a finding of great bodily injury. (See *People v. Wade*, *supra*, 204 Cal.App.4th at pp. 1146–1149 [choking victim's loss of consciousness was enough to constitute serious bodily injury, even though victim did not know how long she was unconscious and required no medical treatment].)

Defendant acknowledges the equivalency of "great bodily injury" and "serious bodily injury," but asserts that such injury "must still be a 'significant or substantial injury' " and that it "does not mean a simple, momentary 'black out' as one is surprised or struck." However, there is no durational test for loss of consciousness. (See *People v. Escobar* (1992) 3 Cal.4th 740, 746–747, 750 [noting there is no particular standard for severity in section 12022.7]; *People v. Le* (2006) 137 Cal.App.4th 54, 58–59.)

Moreover, "[i]t is well settled that the determination of great bodily injury is essentially a question of fact, not of law," and thus is a question for the jury. (*People v. Escobar*, *supra*, 3 Cal.4th at p. 750.) " ' "If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*Ibid.*)

6

Here, defendant ran up behind Doe and struck her so hard she experienced pain, blacked out, and came to only after she was face down on the ground. This trauma suffices to sustain the jury's finding of great bodily injury.

## B. Admission of the Rhino7 Packaging

Defendant moved in limine to exclude evidence of the "description and . . . characterization of the pills as more prejudicial than probative," claiming the evidence was inflammatory and only incidentally relevant because any inference that defendant was in possession of Doe's credit card could be obtained through other means (e.g., the surveillance video of defendant making the purchase).

In allowing the evidence, the trial court stated: "This is part of what the witness saw, the witness indicated. This is alleged to have been what the defendant is doing exactly. It does, as indicated previously, tie this defendant to the use of credit cards by the complaining witness; ergo, showing that this would have been defendant doing this, and the prior purchase of such may certainly substantially indicate, as a probative matter, intent with respect to engaging in sexual intercourse, whatever the time may be. Therefore, I'm going to allow it because I don't find that the prejudicial effect is outweighed by the probative value []. I don't find that it is going to confuse the issues or it is going to unduly consume time in this case or mislead anyone." The court noted the relevance of the evidence in terms of identity, stating "I don't know if this is an I.D. case or not, but there is a circumstantial inference" of identification in that defendant attempted to buy the pills with Jane Doe's credit card and then had "something that looks exactly like [those pills] found in his car." (Italics omitted.)

The court also believed the packaging (which read "words to the effect," that the pills "maximize the time of intercourse, experience rock-hard erections, maximize sexual confidence, free from pre ejaculation, better ejaculation control, NO limits") was relevant in terms of intent. The court stated, "In my view, you don't have to have some expert come in and testify about whether these pills actually do what they are representing. . . . The issue is: Is this what's purchased? [I]s this what's stated on the box, because that's

7

the inference that can be drawn, that the person, the consumer buying it, is going to believe that that's what's going to happen."

On appeal, defendant contends intent was not an issue at all, and the "adult-oriented" packaging material of the Rhino 7 pills was not relevant to his identity and was more prejudicial than probative as it only served "to elicit emotional bias from jurors." The Attorney General does not assert that the packaging was relevant to intent, but does maintain it was relevant to identifying defendant as the perpetrator, it was not unduly prejudicial, and its admission did not, in any case, constitute prejudicial error.

" '[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the relative probativeness and prejudice of the evidence in question [citations]. Evidence is substantially more prejudicial than probative (see Evid. Code, § 352) if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.] 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.)

There is no question that defendant's purchase of the Rhino 7 pills with Doe's credit card was relevant to identity. However, there was other substantial evidence tying defendant to Doe's possessions and, in particular, there was other evidence of his possession of and unsuccessful use of Doe's credit card. There is also no question that the packaging touting Rhino 7 as a sexual enhancement product, in and of itself, was not relevant to identity and it could have triggered irrelevant reactions on the part of jurors. Accordingly, whether admission of the Rhino 7 packaging, itself, was an abuse of discretion is a close call.

However, we need not, and do not, determine whether the trial court abused its discretion, since even if it did so, the error was not prejudicial under *People v. Watson* (1956) 46 Cal.2d 818, 836. Indeed, the evidence of defendant's guilt was overwhelming. There was significant video footage showing a vehicle like defendant's following Doe to her apartment. The apartment security video showed an individual fitting defendant's

8

height and weight striking Doe from behind.  The video tape from the convenience store and the clerk's testimony established that defendant had possession of and was attempting to use Doe's credit card.  Doe's possessions were found in defendant's car, and the day after the assault, defendant moved photos from Doe's Facebook account to his cell phone.  In the face of all this evidence, there is no reasonable possibility the result would have been different had the Rhino 7 packaging been excluded.

### C. The Prosecutor's Final Closing Argument

During the examination of forensic analyst Steven Crotti, the prosecution asked if any private investigators had asked to perform a separate analysis.  Defense counsel objected, and the trial court sustained the objection.  Similarly, during Angela Meyers testimony, the prosecution asked "And so if anyone had a question about your results, they could request testing be done by another lab to verify that?"  Defense counsel once again objected, and outside the presence of the jury counsel stated she "want[ed] to make a record regarding the line of questioning that has come up both with Mr. Crotti and Ms. Meyers. . . .  [¶] The Prosecutor is, I believe, eliciting from the witnesses information that she will argue in closing argument as to the ability of the defense to test evidence.  I believe one, that it is misconduct; two, it is burden shifting.  It should be excluded."  The prosecution responded that "Counsel made it clear from their opening statement that their intent was to attack the DNA in this case, and it is fair to ask about whether it's fair if somebody foresees a problem with the DNA [] analysis that was done in this case, whether or not there remains DNA that could also be tested or whether or not their data could also be reviewed."

The trial court ruled there was no burden-shifting or misconduct, as "[s]imply, in my view, the questions which really are truthful:  Was there any DNA remaining, and was that sufficient to retest if one wanted to retest?  That can go to the D.A., that can go to the defense."  The court noted that this line of questioning is a "very different argument" than "Look, they could have tested if they wanted to, we did."  The court then warned "I'm not sure what your . . . closing argument may be, but certainly not in the case in chief that should not be brought up or mentioned.  There is an area of law that

9

talks about, you know, logical witnesses and things in that regard, but I don't think we are at that point. . . . This is simply *Here's how the evidence is, Here's how it is preserved, This is what, in fact, happened in this case*. . . . Your opening of your closing argument you should not mention anything in that regard. And if you believe in your rebuttal closing argument that you would want to talk about something like that based on something that Defense Counsel has said, you need to hear it before you make that argument to the jury."

The prosecutor responded, "Well, your Honor, I am completely aware of what the rules are and what the case law is about what I can and cannot argue. [¶] . . . [¶] So I do think it's not proper for the Court to try to preemptively tell me I have to run my rebuttal arguments by the Court or Defense Counsel. We don't even know what Defense Counsel is going to argue yet. So I think this entire discussion is premature." The court reiterated that it was "not trying to hand tie either one of you with respect to any of your arguments that are reasonably based on the evidence (*sic*). [¶] But because she has argued it in the way she's argued it, meaning [defense counsel], that if, in fact, there is a burden shifting in this case, based on the statements, you know, that's the kind of area that we don't want to have to unring the bell. We want to know if there is something there, and that way I can make a ruling, we can all three make a record of everything." The court then reaffirmed that there had been no misconduct or burden shifting, and that "Fundamental fairness is still maintained in this matter by what has been stated and what is on the record," and brought the jury back in to continue argument.

During final closing argument, the prosecutor stated: "Now, the defense does not have the burden in this case. I have the full burden to prove the charges to you. They don't have to present any evidence, there is no requirement. The burden is entirely on me. So they don't have to put on evidence. [¶] But if there was some glaring obvious problem with this evidence, this woman [defense counsel] is a smart lawyer, she's a good lawyer, she could have brought somebody in here to either look at the criminalist notes or retest the DNA. They're not required to do that."

Defendant objected on the ground of burden shifting.

The trial court then met with counsel outside the presence of the jury and stated: "The objection is noted. I am not stating there's misconduct, and I am not finding that there is any misconduct based on [the prosecution's] response because there was, again, matters brought up from the counsel—maybe not on that specific issue, but the DNA, but certainly about what the District Attorney had not done in this case, and so in that regard I don't find this to be misconduct. . . . [¶] But I do find that under these circumstances I am going to sustain the fact that it is probably not an appropriate argument at this point on this issue that she was raising, and I will strike it." Once returned to the jury, the court sustained the objection, struck the comments about what defense counsel could have done, and instructed the jury to disregard those remarks and reminded the jury that "what the lawyers say is not evidence, but even in argument that is something that you should not consider for any purpose."

In *People v. Cook* (2006) 39 Cal.4th 566, 607 (*Cook*), the defendant maintained the prosecutor impermissibly sought to shift the burden of proof when, during a series of questions to a criminalist, the prosecutor asked if defense counsel "could have subjected the autopsy bullets to its own testing by an independent laboratory." The court noted the "prosecutor did not ask whether the defense had a duty to do independent testing, [but] merely whether the defense had an opportunity to do so." (*Id.* at p. 607.) The court held, "Pointing out that contested physical evidence could be retested did not shift the burden of proof." (*Ibid.*)

The defendant in *Cook* also asserted comments the prosecutor made during closing argument constituted prosecutorial misconduct and impermissibly shifted the burden of proof. (*Cook*, *supra*, 39 Cal.4th at p. 607.) "In response to the defense theory that two different guns were used" in the killings, the prosecutor said " 'So where is the second gun? The defense can call criminalists. . . . They can; they don't. [¶] It's a lot easier to sit up here and try to sort of slant the truth for you all hoping to somehow hoodwink one of you perhaps, hang this case.' " (*Ibid.*) The defendant objected and the trial court admonished the jury that the prosecution had the burden of proof. (*Id.* at pp. 607–608.) The Supreme Court held "A prosecutor may make fair comment on the state of the

11

evidence," and that the challenged argument "constituted fair comment on the absence of evidence of a second gun." (*Id*. at p. 608.) Furthermore, the trial court had instructed the jury on the prosecution's burden of proof and that defense " 'does not have to prove anything.' " (*Ibid*.)

Here, too, the prosecutor was essentially commenting on the state of the evidence and defendant's failure to call logical witnesses. In fact, during the defense closing, counsel had argued: "We also know that getting to that haplotype in the first place is a little bit questionable. [¶] Steven Crotti talked to us and said that because he had so little DNA to work with, he actually ended up combining two different samples together so that they could be tested as one. . . . [¶] And what we ended up with at the end of the day was an analysis that yielded DNA from more than one donor, a mysterious donor that the Prosecution suggests that we should just disregard in this case. [¶] . . . Nothing to explain those extra alleles that were seen when they did the analysis of the Y-STR." It was not beyond the pale for the prosecutor, in final closing, to defend the DNA evidence and point out that defendant had not presented any contrary DNA or expert evidence.

But, again, we need not, and do not, decide whether the prosecutor actually transgressed the bounds of proper argument, as defendant cannot show any prejudice from the asserted transgression. The prosecutor repeatedly acknowledged to the jury that she bore the burden of proof and the defendant had no burden of proof. The trial court promptly addressed defendant's objection. It then sustained defendant's objection and explicitly admonished the jury, ameliorating any conceivable prejudice from the prosecutor's comment.[3] (See *People v. Riggs* (2008) 44 Cal.4th 248, 299 [concluding even if prosecutor had committed misconduct, given that the jury was admonished and

_____

[3] That the prosecutor did not ask permission to make the no-retesting comment before she made it in her final closing, as the trial court had earlier asked, is irrelevant to whether she engaged in constitutionally impermissible conduct and whether any such conduct was prejudicial. All the jury knew was that the defense made an objection during final closing, the parties and the court discussed it, and the trial court sustained the objection and admonished the jury to heed the instructions.

"we assume the jury followed the admonishment," any prejudice was avoided].) Accordingly, the prosecutor's comment was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

### D. *The Life Term for Sexual Battery by Restraint*

The jury convicted defendant of sexual battery by restraint (§234.4, subd. (a)—count 6) and the trial court sentenced him to 25 years to life, after finding him ineligible for a reduced sentence under Proposition 36. Defendant contends the court erred.

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended sections 667 and 1170.12 . . . (hereafter the Act). The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.) One such enumerated disqualifying factor is if the prosecution "pleads and proves" that the "current offense is a felony sex offense . . . that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290. . . ." (§ 1170.12, subd. (c)(2)(C)(ii).)

The crux of defendant's challenge on appeal is that count 6 (sexual battery by restraint) is not a serious or violent felony and, thus, is not an automatically disqualifying offense and the People did not adequately plead and prove what would make it a disqualifying offense (i.e., mandatory sex offender registration under section 290). Since the People failed to give him the purportedly required notice "of an intent to seek to exempt the Section 243.4(a) violation from Proposition 36," then his "strike priors" qualify him "for only a doubling of the term otherwise imposed . . . not a life term."

Defendant acknowledges the information and amended information gave "notice" that a conviction on count 6 would require registration under section 290. (Capitalization

omitted.) But, citing *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), defendant claims "[e]xpress pleading of a [Proposition 36] disqualifying allegation"—i.e., an explicit reference to subdivision (c)(2)(C) of section 1170.12—"is required."

*Mancebo*, *supra*, 27 Cal.4th 735, involved the imposition of a multiple victim enhancement that was not pleaded in the information. The information alleged two circumstances, gun use and kidnapping, and the gun-use circumstance was specifically pleaded. After a jury convicted the defendant of multiple violent sex offenses against two different victims, and despite the fact that "[n]either the original nor amended information ever alleged a multiple victim circumstance" under section 667.61, subdivision (e)(5), the trial court imposed the enhancement. (*Mancebo*, at pp. 740, 743.) The defendant appealed and asserted the One Strike law's pleading provision required the multiple victim circumstance to be "specially alleged in the information and proved" before the People could use that circumstance in support of a One Strike sentence. (*Id.* at pp. 740–741.) The Court of Appeal agreed and ordered the enhancements stricken. (*Id.* at p. 741.) The Supreme Court affirmed, concluding "the trial court erred at sentencing when it purported to substitute the unpled multiple victim circumstances for the properly pleaded and proved gun-use enhancements in support of the One Strike terms." (*Id.* at p. 754.)

The high court focused on the language of section 667.61, subdivisions (i) and (f). The court explained: The "plain wording of subdivisions (f) and (i) of section 667.61 together controls here. Subdivision (i) requires that '[f]or the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) *shall be alleged in the accusatory pleading* and either admitted by the defendant in open court or found to be true by the trier of fact.' (Italics added.) Neither the original nor the amended information ever alleged a multiple victim circumstance under subdivision (e)(5). Substitution of that unpleaded circumstance for the first time at sentencing as a basis for imposing the indeterminate terms violated the explicit provisions of the One Strike law. [¶] Moreover, subdivision (f) of section 667.61 provides, in pertinent part, that 'If only the minimum number of circumstances specified in subdivision (d) or (e)

14

which are required for the punishment provided in subdivision (a) or (b) to apply have been *pled and proved*, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) or (b) *rather than being used to impose the punishment authorized under any other law*, unless another law provides for a greater penalty.' (Italics added.) [¶] The People had to plead and prove the alleged gun-use circumstances under counts 3 and 9 before the court could impose the 25-year-to-life indeterminate terms under those counts. They were in fact formally pleaded in the information. Use of those same circumstances to impose 10-year gun-use enhancements would not fall within the exception of 'punishment authorized under any other law' that 'provides for a greater penalty.' (§ 667.61, subd. (f).) Accordingly, imposition of section 12022.5(a) gun-use enhancements under counts 3 and 9 violated the plain language and express provisions of section 667.67, subdivision (f)." (*Mancebo*, *supra*, 27 Cal.4th at pp. 743–744.)

Here, the plain language of section 1170.12, subdivision (c)(2)(C)(ii) states that if the prosecution "pleads and proves" that the "current offense is a felony sex offense . . . that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290," then Proposition 36 is inapplicable. Both the information and the amended information gave "notice" that a conviction of sexual battery (count 6) was a conviction for which section 290 registration would be required. In other words, by its plain terms, section 1170.12 only requires the prosecution to plead and prove the current offense is one as to which section 290 registration is required. Despite defendant's contention that the pleadings did not give him specific notice that the prosecution would seek to exempt count 6 from Proposition 36, there is nothing in the statute that requires that section 1170.12, itself, be specifically pleaded to trigger exemption from Proposition 36.

We also observe that the Supreme Court expressly warned against applying its holding in *Mancebo* to other statutes—"We caution that our holding is limited to a construction of the language of section 667.61, subdivisions (f) and (i), read together, as controlling here. We have no occasion in this case to interpret other statutory provisions not directly before us." (*Mancebo*, *supra*, 27 Cal.4th at p. 745, fn. 5.)

15

Thus, "*Mancebo* . . . stands for the limited proposition that a defendant is entitled to notice of the specific *facts* that will be used to support an enhanced sentence. Facts alleged and proved only as part of the substantive crime charged cannot later be used to support a sentencing enhancement." (*People v. Tardy* (2003) 112 Cal.App.4th 783, 789, italics added.) Here, defendant is not making a pleading and proof argument as to the *specific facts and circumstances* of the crime on which he was sentenced. Rather, section 1170.12, subdivision (c)(2)(C)(ii), spells out the consequences of priors when a conviction of the charged crime requires section 290 registration. In other words, section 1170.12, subdivision (c)(2)(C), does not concern specific facts and circumstances of the charged crime which, if found true, will give rise to an increased sentence. Rather, section 1170.12, subdivision (c)(2)(C) flatly disqualifies a defendant from a potentially reduced sentence because of the legally required punishment for that crime (namely, section 290 mandatory registration), once the People have pleaded and proved the crime.

We therefore conclude the information and amended information—which expressly pled that a conviction of sexual battery (count 6) would require section 290 registration —was sufficient under Proposition 36.

### E. Consecutive Sentencing on the Digital Penetration Convictions

Defendant contends that to impose consecutive sentences on the digital penetration convictions, the trial court was required to determine whether, under section 667.6, subdivision (d), these sex crimes occurred on "separate occasions" as defined by that statute. (§ 667.6, subd. (d).) This definitional language provides: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (*Ibid.*) Defendant maintains the trial

16

court erred in ruling this statute was inapplicable because it was sentencing defendant under the Three Strikes law.

To provide context, we summarize the sentencing proceedings. Defendant filed a *Romero*[4] motion inviting the trial court to dismiss his strike priors for sentencing purposes. He also maintained that under section 667.6, subdivision (d) the court should not impose consecutive sentences on the penetration and rape convictions because the evidence did not establish that they occurred "on separate occasions" as defined by that statute—that is, the evidence did not establish that he had a "reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." (§ 667.6, subd. (d).)

The prosecution opposed defendant's *Romero* motion and urged that defendant be sentenced as a three strikes offender. It also took the position that "under . . . [s]ections 667(e)(6) and 1170.12(a)(6)"—that is, under the Three Strikes law—the trial court "must impose consecutive 25 to Life sentences for each of the offenses." The prosecution also offered its view on consecutive and concurrent sentences, apparently to have some say on the issue if the court concluded section 667.6, subdivision (d) applied. Since defendant took the victim's purse before commencing the sexual assault, the prosecutor maintained "the court should impose a consecutive sentence to the subsequent sex offenses." As for the pre-rape penetration offenses, the prosecutor stated: "It is unclear whether during the commission of Counts 2 through 6, the Defendant had an opportunity to reflect upon his behavior in between acts. It is the People's position that the court should therefore run those counts concurrent to each other. In other words, the court should impose a consecutive sentence to Count 1 for Count 2, but run the sentences for counts 3 through 6 concurrent to the sentence for Count 2." "However," noted the prosecution, "given that [penetration] is an enumerated offense under Penal Code Section 667.6(d) the Court is well within its right to sentence the Defendant consecutively on counts three through five should it so choose." As for count 7 (the rape) and count 8 (the post-rape digital

---

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

17

penetration), the prosecutor asserted "there was a clear break in Defendant's actions," he had an opportunity to reflect on his actions, and therefore, the sentences on both should run consecutively.

The trial court struck only one of defendant's prior strikes. It next recognized that section 667.6, subdivision (d), mandates consecutive sentences for enumerated sex crimes against a single victim on "separate occasions," thus requiring a court to determine whether the defendant had a reasonable opportunity to reflect on his acts and nevertheless resumed sexually assaultive behavior. But, said the court, it intended to sentence defendant "under the Three Strikes sentencing scheme." Therefore, sentencing was "not being made pursuant to Penal Code 667.6 (d), and accordingly the Court need not make any determination regarding the considerations outlined under that section, and so they won't be made." The court further observed that "the Three Strikes law has eliminated the aggregate term limitations on consecutive sentences. When sentence is imposed on third strike offenders or under the indeterminate sentence law, and as an ISL, there are no limitations on consecutive sentences for crimes punished under the indeterminate sentencing law." Summing up, the court stated: "Essentially it is a Three Strike sentencing which is consecutive full-term sentencing, and under the respective statutes they mandate the full term consecutive sentences."

We now turn to whether consecutive sentences for the digital penetration convictions were required under the Three Strikes law. This law is set forth in two statutes, sections 667, subdivisions (b)–(j) and 1170.12. Section 667, subdivisions (b)–(j) is the legislative version of the law, which became operative in March 1994. Section 1170.12 is the initiative version, which was enacted by the voters and became operative in November 1994. (*People v. Lawrence* (2000) 24 Cal.4th 219, 222, fn. 1 (*Lawrence*).) In many respects, the two statutes are " 'virtually identical.' " (*Ibid.*; see *People v. Hazelton* (1996) 14 Cal.4th 101, 110–111 (conc. opn. of Mosk, J.) [recounting the legislative history of the two statutes].)

"Both versions of the statute were substantially revised by Proposition 36, enacted by the voters on November 6, 2012. . . ." (Couzens & Bigelow, Sentencing Cal. Crimes

18

(The Rutter Group 2017) § 20:1, p. 20-3.) We are concerned here with changes made to section 1170.12, subdivision (a)(7), which concerns consecutive sentencing, that were not made to the identical language of section 667, subdivision (c)(7).

Defendant and the Attorney General have divergent views as to the effect of this change of language on the power of the courts to impose concurrent, rather than consecutive, sentences for multiple serious and/or violent felony convictions. Defendant maintains Proposition 36 did not alter the Supreme Court's holding in *Hendrix*, *supra*, 16 Cal.4th 508, that under the Three Strikes law, trial courts have discretion to impose concurrent sentences for multiple serious or violent felonies against a single victim if they were committed on the "same occasion" or arose from the "same set of operative facts." The Attorney General maintains Proposition 36 removed this discretion and, thus, effectively overruled *Hendrix*. According to the Attorney General, trial courts must now impose consecutive sentences for all current multiple serious or violent felony convictions, whether or not these crimes occurred on the "same occasion" or arose from the "same set of operative facts."[5]

We conclude the change Proposition 36 made to section 1170.12, subdivision (a)(7) does not, in large measure, alter the Three Strikes sentencing principles the Supreme Court set forth in *Hendrix*.

In *Hendrix*, the high court addressed whether, under section 667, subdivisions (c)(6) and (7), a trial court has discretion to impose concurrent sentences in cases where " 'there is a current conviction for more than one serious or violent felony.' " (*Hendrix*, *supra*, 16 Cal.4th at p. 512, fn. 4, quoting § 667, subd. (c)(7).)

---

[5] Several treatises on felony sentencing take the same position as the Attorney General. (E.g., Couzens & Bigelow, Cal. Three Strikes Sentencing (The Rutter Group 2017), § 8:1, p. 8-7 ["Multiple crimes sentenced as a third strike offense must be consecutively sentenced, whether or not the crimes occurred on the same occasion or out of the same operative facts."], pp. 8-8 to 8-8.1, pp. 8-10 to 8-11; Couzens & Bigelow, Sentencing Cal. Crimes (The Rutter Group 2017) § 20:1, p. 20-6.1 ["Proposition 36 removes any discretion of the trial court to sentence multiple serious or violent crimes concurrently."].)

19

The court first considered the language of section 667, subdivision (c)(6), which provides: " 'If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e).' " (*Hendrix*, *supra*, 16 Cal.4th at p. 512, quoting § 667, subd. (c)(6).) "By its terms," said the court, "this subdivision applies to *any* current felony conviction." (*Hendrix*, at p. 512.) "Moreover, subdivision (c)(6) clearly provides that consecutive sentencing is mandatory for any current felony convictions 'not committed on the same occasion, and not arising from the same set of operative facts.' " (*Ibid.*, quoting § 667, subd. (c)(6).) "By implication," then, said the court, "consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts' " (*Hendrix*, at pp. 512–513), and a trial court retains discretion to impose concurrent sentences so long as consecutive sentencing is not mandated by another statute. (*Id.* at p. 514.)

The court next considered the language of section 667, subdivision (c)(7), which provides: " 'If there is a current conviction for more than one serious or violent felony *as described in paragraph (6)*, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' " (*Hendrix*, *supra*, 16 Cal.4th at p. 513, quoting § 667, subd. (c)(7), italics added.) This subdivision, observed the court, thus applies "when there is more than one current serious or violent felony" conviction. (*Hendrix,* at p. 513.) And "[t]he most logical meaning of the reference to 'paragraph (6)' " is that "it refers to subdivision (c)(6)." (*Ibid.*) "Thus, when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' *not only* must the court impose the sentences for these serious or violent offenses consecutive to each other, *it must also* impose these sentences 'consecutive to the sentence for *any other conviction* for which the defendant may be consecutively sentenced in the manner prescribed by law.' " (*Ibid.*, quoting § 667, subd. (c)(7), italics added.) "By implication," then,

"consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts' " (*Hendrix,* at p. 513, quoting § 667, subd. (c)(6)), assuming "consecutive sentences [are] not required under a statute other than the three strikes law." (*Hendrix,* at p. 514; see *People v. Deloza* (1998) 18 Cal.4th 585, 596 [courts have discretion to impose consecutive or concurrent sentences for same occurrence/same operative facts serious and/or violent felony convictions provided consecutive sentences are not required "under a statute other than the three strikes law"].)

The court hastened to further explain why its reading of section 667, subdivision (c)(7) did not render it "duplicative" of subdivision (c)(6), given that subdivision (c)(6) applies to "*any* current felony not committed on the same occasion, and not arising from the same set of operative facts" and thus already includes multiple serious and violent felonies. (*Hendrix*, *supra*, 16 Cal.4th at p. 513.) What section 667, subdivision (c)(7) *adds* in connection with serious or violent felonies, the court reiterated, is that the courts must *also* impose the consecutive sentences for such felonies " 'consecutive to the sentence for *any other conviction* for which the defendant may be consecutively sentenced in the manner prescribed by law.' " (*Hendrix*, at p. 514, quoting § 667, subd. (c)(7), italics added.)

Given the plain language of the statutes, Justice Mosk observed in his concurrence that "section 667(c)(6) and (7) show themselves to state two rules—a general one, for *all* felonies 'not committed on the same occasion, and not arising from the same set of operative facts' (§ 667(c)(6)); and a special one, for only 'serious or violent felon[ies]' of that description (§ 667(c)(7))." (*Hendrix*, *supra*, 16 Cal.4th at p. 518 (conc. opn. of Mosk, J.), italics added.) The "general" rule set forth in subdivision (c)(6) applies "whenever a defendant is convicted of more than one felony of *any* kind." (*Ibid.*, italics added.) The "special" rule "governs only when a defendant is convicted of more than one serious or violent felony 'not committed on the same occasion, and not arising from the same set of operative facts' (§ 667(c)(6)), and mandates that the sentence for each such 'different occasions/different facts' felony must run consecutive *to the sentence for*

21

*any other offense, whether felony or misdemeanor, for which a consecutive sentence may be imposed.*" (*Ibid.*) Justice Mosk "fully" joined the court's opinion (*id.* at p. 519 (conc. opn. of Mosk, J.), and the opinion does not suggest he was in error in any respect as to the meaning and import of the statutory language.

The Supreme Court reiterated these Three Strike sentencing principles in *Deloza* in holding that the analysis used to determine if multiple punishment is permitted under section 654 is not the analysis courts are to employ in determining whether a felony was " 'not committed on the same occasion' " or did " 'not aris[e] from the same set of operative facts' " for purposes of section 667, subdivision (c)(6) and section 1170.12, subdivision (a)(6).**[6]** (*Deloza*, *supra*, 18 Cal.4th at pp. 590–591 [in *Hendrix*, the court "concluded that section 667, subdivision (c)(6), applies to *any* current felony conviction"; and under subdivision (c)(7) " 'not only must the court impose the sentences for these serious or violent offenses consecutive to each other, *it must also impose* these sentences "consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law," ' " (italics added)].) The court reiterated these sentencing principles again in *Lawrence, supra*, 24 Cal.4th at pages 222–223, in which it further elaborated on the meaning of " 'same occasion' " and " 'same set of operative facts' " as used in sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6). It also observed that requiring "consecutive sentences for those current crimes committed on *different* occasions is consistent with the focus of the three strikes law, which is recidivism." (*Lawrence*, at p. 226.)

Proposition 36 made the following changes to the language of section 1170.12, subdivision (a)(7), which we set forth along with subdivision (a)(6), for context:

> "(a) Notwithstanding any other provision of law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has

---

**[6]** Notably, the court also specifically declined to adopt the " 'separate occasions' " definition applicable to multiple sex crimes sentencing under section 667.6, subdivision (d). (*Deloza*, *supra*, 18 Cal.4th at pp. 596–598.)

22

one or more prior serious and/or violent felony convictions, as defined in subdivision (b),[7] the court shall adhere to each of the following: [¶] . . . [¶] "(6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section.

"(7) If there is a current conviction for more than one serious or violent felony as described in ~~paragraph (6) of this~~ subdivision **(b)**, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (§ 1170.12, subd. (a)(6) & (7), as amended by Prop. 36, § 4, eff. Nov. 6, 2012, boldface and strike through added.)

Thus, no change was made to the language of section 1170.12, subdivision (a)(6). Accordingly, this subdivision continues to apply to *any* current felony convictions (including serious and/or violent felonies) and requires consecutive sentencing where the felonies (including serious and/or violent felonies) were not committed on " 'the same occasion' " or did not arise from " 'the same set of operative facts.' " (*Hendrix, supra*, 16 Cal.4th at p. 512.) The courts also retain discretion to impose concurrent sentences for felonies (including serious and/or violent felonies) committed on the same occasion or arising from the same set of operative facts. (*Id.* at pp. 513–514.)

As for section 1170.12, subdivision (a)(7), Proposition 36 replaced the reference to "paragraph (6)" with a reference to "subdivision (b)," which, as we have noted, defines serious and/or violent felonies for purposes of the Three Strikes law. Thus, Proposition 36 changed the *triggering* language of the subdivision, and subdivision (a)(7) now applies not only when serious or violent felonies were not committed on the same

---

[7] Section 1170.12, subdivision (b) defines "serious and/or violent" felony for purposes of the Three Strikes law. (See § 667, subd. (d) [same definition in legislative version of the law].)

occasion or did not arise from the same set of operative facts, but whenever a defendant is convicted of multiple serious or violent felonies. Proposition 36 made no change, however, to the *directive* portion of section 1170.12, subdivision (a)(7), which, as the Supreme Court explained in *Hendrix,* is what makes subdivision (7) not duplicative of subdivision (6). (*Hendrix, supra*, 16 Cal.4th at pp. 513–514.) This portion of subdivision (a)(7), *additionally* requires a court to impose the sentences for serious and violent felonies "consecutive to the sentence for *any other conviction* for which the defendant may be consecutively sentenced in the manner prescribed by law." (§ 1170.12, subd. (a)(7); *Hendrix,* at pp. 513–514.) Accordingly, section 1170.12, subdivision (a)(7) now applies whenever there are multiple serious and/or violent felony convictions, whether or not they were not committed on the "same occasion" or did not arise from the "same set of operative facts." And the sentences for those serious and/or violent felonies (imposed either consecutively or concurrently as required or allowed under section 1170.12, subdivision (a)(6)), must "run consecutive *to his sentence for any other offense, whether felony or misdemeanor, for which a consecutive sentence may be imposed.*" (*Hendrix*, at p. 518 (conc. opn. of Mosk, J.).)

In short, the change to section 1170.12, subdivision (a)(7) made by Proposition 36 impacts only the additional requirement for consecutive sentencing of "other" current offenses (namely, *non*serious and/or violent felonies and misdemeanor offenses). To paraphrase Justice Mosk, subdivisions (a)(6) and (7) continue to "show themselves to state two rules" in a Three Strikes case[8]—"a general one, for all felonies 'not committed on the same occasion, and not arising from the same set of operative facts' " (§§ 667, subdivision (c)(6), 1170.12, subd. (a)(6)) "and a special one, for only 'serious or violent felon[ies]' " as defined by the Three Strikes law. (*Hendrix*, *supra*, 16 Cal.4th at p. 518 (conc. opn. of Mosk, J.).) That "special one" now requires that where there are multiple serious and/or violent felony convictions, the sentences for those crimes "must run

---

[8] Meaning a case governed by the Three Strikes law, and not the sentencing, specifically, of a third striker.

consecutive *to the sentence for* <u>*any other*</u> *offense, whether felony or misdemeanor, for which a consecutive sentence may be imposed.*"[9] (*Ibid.*, underscoring added.)

To this extent, both parties correctly state there is now a "conflict" between the legislative version of the Three Strikes law (§ 667, subd. (c)(7)), which was not amended by Proposition 36, and the initiative version (§ 1170.12, subd. (a)(7)), which was amended. In our view, the later-enacted initiative version of the law controls, and we cannot read the electorate's change of its language as having no meaning. (See *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1023 [a construction that renders some statutory language redundant or surplusage is to be avoided].) And while we appreciate that the voter analysis accompanying Proposition 36, and the pro and con arguments, which the voters were more likely to review, did not mention the change to the language of section 1170.12, subdivision (a)(7), the fact remains that the entire initiative measure was printed in the voter information guide and all changes to existing statutory provisions were denoted by way of emphasis and inter-interlineation. (See *Wright v. Jordan* (1923) 192 Cal. 704, 713 [voters "must be assumed to have voted intelligently upon an amendment to their organic law, the whole text of which was supplied each of them prior to the election and which they must be assumed to have duly considered, regardless of any insufficient recitals in the instructions to voters or the arguments *pro* and *con* of its advocates or opponents accompanying the text of the proposed measure"]; *People v. Valencia* (2017) 3 Cal.5th 347, 369 [courts generally assume voters " 'duly considered' " the entire text of a proposal submitted to them for enactment].) We therefore agree with

---

[9] We note that no reference was made in the voting materials or the initiative measure to *Hendrix* and its progeny, which had been controlling on the issue of consecutive and concurrent sentencing under the Three Strikes law for more than a decade. We therefore discern no intent to overrule these decisions, and as we have explained, Proposition 36, while enlarging the *additional* consecutive sentencing requirement as to *other* convictions set forth in section 1170.12 subdivision (a)(7), otherwise leaves section 1170.12, subdivisions (6) and (7), consistent with the basic sentencing principles articulated in those cases.

25

the Attorney General that the only reasonable explanation for the failure to amend the identical language of section 667, subdivision (c)(7) was oversight.

Accordingly, the trial court erred in concluding it had no discretion whatsoever under the Three Strikes law to impose concurrent sentences, and we therefore reverse and remand for resentencing on the digital penetration convictions.

On remand, the court first must determine whether the digital penetration crimes (which are violent felonies under § 667.5, subd. (c) and, thus, violent felonies under the Three Strikes law (§ 1170.12, subd. (b)(1)) were "not committed on the same occasion" or did "not aris[e] from the same set of operative facts" within the meaning of the Three Strikes law. (See *Lawrence*, *supra*, 24 Cal.4th at pp. 225–234; *Deloza*, *supra*, 18 Cal.4th at pp. 592–599.) If the court concludes otherwise—that is, that they were committed on "the same occasion" or arose from "the same set of operative facts"—the court has discretion to impose concurrent sentences, but only if no other statute requires consecutive sentencing. (*Deloza*, at. p. 596; *Hendrix*, *supra*, 16 Cal.4th at p. 514.)

The court must therefore next consider, in connection with the digital penetration convictions, whether consecutive sentences are mandatory under section 667.6, subdivision (d). And in making that determination, the court must apply the definition of "separate occasions" set forth in that statute. Thus, even if the court determines the sexual penetration crimes were committed on "the same occasion" or arose from the "same set of operative facts" for purposes of section 1170.12, subdivision (a)(6), if the court further determines these crimes occurred on "separate occasions" for purposes of section 667.6, subdivision (d), consecutive sentencing is required under that statute and, in turn, under the Three Strikes law. If the court determines these sex crimes did not occur on "separate occasions" under section 667.6, subdivision (d), the court has the discretion to impose concurrent sentences.

Because all of the felonies of which defendant was convicted are serious and/or violent felonies, there are no "other" nonserious and/or violent felonies or misdemeanors triggering the *additional* consecutive sentencing mandate set forth in section 1170.12, subdivision (a)(7) pursuant to Proposition 36. We note, for illustrative purposes, that had

defendant also been convicted of a nonserious and/or violent felony, the term imposed for that crime would have had to have been consecutive to the terms of the serious and/or violent felonies (as required or allowed under § 1170.12, subd. (a)(6) & § 667, subd. (c)(6)), regardless of whether those serious and/or violent felonies were committed on "the same occasion" or arose from "the same set of operative facts."[10] (§ 1170.12, subd. (a)(6).)

### F. *Staying Sentence Under Section 654*

Defendant also contends the trial court, pursuant to section 654, should have stayed his sentence on count 6 (sexual battery by restraint) because, according to defendant, that conduct was not severable from the digital penetration and rape conduct. His argument is not entirely clear, but appears predicated on the claim that, while his sexual battery by restraint conviction does not fall within section 667.6, subdivision (d), it does fall within section 667.6, subdivision (c), which allows, but does not require, a trial court to impose consecutive sentences for specified sex crimes involving the "same victim on the same occasion." (§ 667.6, subd. (c).) It appears that both defendant and the Attorney General have confused the issue of consecutive/concurrent sentencing with the issue of staying a sentence under section 654. (See *Deloza*, *supra*, 18 Cal.4th at pp. 591–596 ["section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively"].)

For the reasons we have discussed in the preceding section of this opinion, we remand on this count, as well, for the trial court to consider both the issue of consecutive sentencing and whether the sentence for the sexual battery by restraint conviction should be stayed under section 654.

Sexual battery by restraint (§ 243.4) is a "serious" felony under section 1192.7, subdivision (c) and, thus, is a "serious and/or violent" felony under the Three Strikes law.

---

**10** Prior to Proposition 36 that would not have been the case, since at that time, as we have discussed, the additional consecutive sentencing requirement set forth in subdivision (a)(7) applied only when current serious and/or violent felonies were not committed on the same occasion or not arising from the same set of operative facts.

(§ 667, subd. (d)(1); § 1170.12, subd. (b)(1).)  Accordingly, on remand, the trial court must first determine under section 1170.12, subdivision (a)(6) (see § 667, subd. (c)(6)) whether this serious and/or violent felony was not committed "on the same occasion" or did not arise out of the "same set of operative facts" within the meaning of the Three Strikes law.  If the court determines it was committed on the "same occasion" or arose out of the "same set of operative facts" for purposes of the Three Strikes law, the court must then exercise its discretion whether to impose a consecutive or concurrent sentence. The court has discretion in this regard because subdivision (c) of section 667.6, unlike subdivision (d), does not *require* consecutive sentencing, but rather leaves that question to the trial court.  (§ 667.6, subd. (c) [court "may" impose a consecutive sentence if the sex crime involved "the same victim on the same occasion"]; see *Deloza*, *supra*, 18 Cal.4th at p. 596 [court has discretion under § 667, subd. (c)(6) to impose concurrent sentences for multiple serious and/or violent felonies, but only if no other statute requires consecutive sentencing].)

Whether the sentence for the sexual battery by restraint conviction must be stayed under section 654 is an entirely different issue.  (See *Deloza*, *supra*, 18 Cal.4th at p. 594.) It is also an issue that, as far as we can determine from the record, was not addressed by the trial court.  Accordingly, in addition to determining whether the sentence for this crime must run consecutively or whether the court has discretion to order the sentence to run concurrently, the court must also determine on remand whether the sentence must be stayed under section 654.

## III.    DISPOSITION

The judgment is affirmed in part and reversed in part.  We reverse the consecutive sentences for the digital penetration convictions and the sexual battery by restraint conviction and remand for further sentencing proceedings consistent with this opinion. We otherwise affirm the judgment.

_____

Banke, J.

We concur:

_____

Humes, P.J.

_____

Dondero, J.

A146958, *People v. Torres*

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Gloria Rhynes

Counsel:

Dirck Newbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Rene A. Chacon and Julia Y. Je, Deputy Attorneys General for Plaintiff and Respondent.