Filed 9/14/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B298366 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA437882) |
| v. | |
| LEVEL OMEGA HENDERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frederick N. Wapner, Judge. Affirmed.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Blythe J. Leszkay and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found Level Omega Henderson guilty on two counts of assault with a semiautomatic firearm (one for each of two victims), one count of possession of a firearm by a felon, and one count of assault by means likely to produce great bodily injury. The trial court sentenced Henderson to a prison term of 27 years, which included consecutive terms on the two convictions for assault with a semiautomatic firearm.

Henderson argues his trial lawyer provided ineffective assistance by failing to call a percipient witness. Henderson also argues he is entitled to a new sentencing hearing because the trial court did not recognize it had discretion under the three strikes law to impose concurrent sentences on the two convictions for assault with a semiautomatic firearm. We conclude Henderson has not shown in this appeal that his trial attorney provided ineffective assistance at trial because the record does not disclose why his lawyer chose not to call the witness or that his attorney's decision was below the standard of care. We also conclude the trial court did not have discretion to impose concurrent sentences on the two convictions for assault with a semiautomatic firearm. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Henderson Gets into a Fight*

In March 2015 Henderson fought with Daniel Tillett in the courtyard of an apartment complex. At one point Henderson walked away from the area where they were fighting and went to his car. William Aguilar, who had been making some repairs at the apartment building, saw Henderson open the trunk of the car

2

and walk back toward the courtyard holding a semiautomatic handgun. Aguilar called the 911 emergency operator.

A few minutes later Henderson returned to his car and drove away.[1] After Henderson left, Aguilar went to the courtyard and saw Tillett and a woman named Tiffany. Tillett was bleeding from his face. Aguilar agreed to take Tillett to the hospital, but before they left, Henderson returned to the courtyard holding the same gun Aguilar had seen before. With his right hand Henderson hit Tillett in the face with the butt of the gun, and with his left hand he hit Tillett with an uppercut to his jaw. Tillett fell to the ground. Tiffany yelled at Henderson, "Please do not kill my baby's daddy." Henderson pointed the gun in a "sweeping motion" at both Tiffany and Aguilar. Aguilar ran to his truck, saw a police car, and flagged it down.

Two police officers went to the apartment complex and saw Henderson standing over Tillett on the ground. Henderson hit Tillett several more times before fleeing to a vacant apartment unit. The officers did not follow Henderson into the apartment. Five minutes later, Henderson walked out of the apartment unarmed. The police searched the apartment and discovered a torn window screen in the bathroom. The police also found a semiautomatic handgun on the ground in a small atrium "directly below the window." The only access to the atrium was through the windows of a few apartments and the roof of the apartment building.

---

[1] It is not clear whether Henderson encountered Tillett again between when Aguilar first saw Henderson and when Henderson returned to his car.

B.    *The People Charge Henderson with Multiple Crimes*

The People charged Henderson with one count of assault with a semiautomatic firearm on Tillett (Pen. Code, § 245, subd. (b), count 1),[2] one count of assault with a semiautomatic firearm on Aguilar (count 5), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1), count 3), and one count of assault by means likely to produce great bodily injury on Tillett (§ 245, subd. (a)(4), count 4).[3]  The People alleged that Henderson had four prior serious or violent felony convictions within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12), that Henderson had two prior serious felony convictions within the meaning of section 667, subdivision (a)(1), and that Henderson served four prior separate prison terms within the meaning of section 667.5, subdivision (b).

C.    *A Jury Convicts Henderson on All Counts*

At trial the People called several witnesses, including Aguilar and the two police officers who arrived at the apartment complex.  The People did not call Tillett or Tiffany.  The parties stipulated Henderson had been convicted of a felony.  Henderson did not call any witnesses.  The jury found Henderson guilty on all counts.

---

[2]    Statutory references are to the Penal Code.

[3]    The People also charged Henderson with one count of possession of a firearm with a prior violent conviction (§ 29900, subd. (a)(1), count 2), but at trial the court granted the People's motion to dismiss that count.

4

D.    *The Trial Court Denies Henderson's Motion for New Trial*

Prior to sentencing, the trial court granted Henderson's motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525].  After several continuances, however, and at Henderson's request, the court appointed new counsel for Henderson.  Henderson filed a motion for new trial, attaching a handwritten declaration from Tiffany stating that, "during the course of the physical altercation" between Henderson and Tillett, she did not see Henderson "with any weapon" and that she saw Henderson and Tillett "fighting with their fists only."  Henderson also attached a transcript of his investigator's interview with Tiffany where Tiffany stated that neither the prosecutor nor Henderson's prior attorney subpoenaed her to testify and that, had she been served with a subpoena, she would have testified.  Henderson argued, among other things, that his prior lawyer rendered ineffective assistance by failing to "fully investigate and secure the attendance of" Tiffany at trial.  The trial court denied Henderson's motion for new trial.

E.    *The Trial Court Sentences Henderson*

In a bifurcated proceeding, the trial court found true all of the prior conviction allegations.  On Henderson's motion, the court struck three of Henderson's four prior serious or violent felony convictions under the three strikes law, one of his two prior serious felony convictions under section 667, subdivision (a)(1), and all of his four prior prison terms under section 667.5, subdivision (b).  The trial court sentenced Henderson to a prison term of 27 years, consisting of the upper term of nine years on

5

count 1, doubled under the three strikes law, a consecutive term of four years on count 5 (one-third the middle term of six years, doubled under the three strikes law), and five years for the remaining enhancement under section 667, subdivision (a)(1). The court also imposed and stayed under section 654 a three-year term on count 3 and a four-year term on count 4. Henderson timely appealed.

## DISCUSSION

A.   *Henderson Has Not Shown His Trial Counsel Provided Ineffective Assistance at Trial*

Henderson argues his trial attorney provided ineffective assistance by failing to interview Tiffany and call her to testify at trial. Henderson contends his attorney's performance was deficient because Tiffany's statement that she did not see Henderson with a gun "would have directly supported" Henderson's theory at trial that he "never used a gun" during his fight with Tillett. The People argue Henderson cannot establish his trial counsel's performance was deficient because the record does not disclose why counsel did not call Tiffany as a witness.

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958 (*Hoyt*); accord, *People v. Mai* (2013) 57 Cal.4th 986, 1009.) "Whether

6

counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review."  (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

"Usually, 'ineffective assistance [of counsel claims are] more appropriately decided in a habeas corpus proceeding.'" (*Hoyt*, *supra*, 8 Cal.5th at p. 958.)  On direct appeal, "we may reverse 'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'" (*People v. Arredondo* (2019) 8 Cal.5th 694, 711; see *People v. Mai*, *supra*, 57 Cal.4th at p. 1009.)  "'All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.'" (*Hoyt*, at p. 958.)

Henderson does not argue (1) or (2), and nothing in the record affirmatively discloses his trial counsel had no rational tactical purposes for not interviewing Tiffany or calling her as a witness or indicates that anyone asked his attorney why she did not or that she failed to respond to such an inquiry.  Henderson argues only (3):  His trial counsel's decision not to call Tiffany was "per se unreasonable"; i.e., there could be no satisfactory explanation for her decision.

But there were several reasons Henderson's trial counsel may have decided not to call Tiffany, reasons to which we defer. (See *People v. Carrasco* (2014) 59 Cal.4th 924, 989 ["The decision whether to call certain witnesses is a 'matter[ ] of trial tactics and strategy which a reviewing court generally may not second-guess.'"]; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1088 [defendant failed to show "there could be no rational tactical

7

purpose for defense counsel's failure to call" a witness where the record did "not affirmatively reveal the lack of a rational tactical purpose for not calling the . . . witness"]; cf. *People v. Bolin* (1998) 18 Cal.4th 297, 334 ["Whether to call certain witnesses is . . . a matter of trial tactics, unless the decision results from unreasonable failure to investigate."].) First, Henderson's trial counsel may not have found Tiffany's account of the incident and proposed testimony credible. (See *Lord v. Wood* (9th Cir. 1999) 184 F.3d 1083, 1095, fn. 8 ["A lawyer who interviews the witness can rely on his assessment of their articulateness and demeanor—factors we are not in a position to second-guess."].) Even if Tiffany told trial counsel she did not see Henderson with a gun, counsel reasonably could have concluded, based on her evaluation of Tiffany as a witness, that the risks of putting Tiffany on the stand and having her say something different or harmful were too great. (Cf. *People v. Freeman* (1994) 8 Cal.4th 450, 522-523 [there was "no basis for finding ineffective assistance of counsel" where the reviewing court could not "determine on appeal the tactical reasons for the approach counsel took," counsel may have preferred making an argument to the jury "to having witnesses testify and be subject to cross-examination," and "we do not know what the witnesses might have said if asked"].)

Second, had trial counsel for Henderson called Tiffany to testify at trial, the prosecutor may have elicited additional facts on cross-examination that supported the People's case or damaged Henderson's defenses. For example, Aguilar testified that he did not see the beginning of the fight between Henderson and Tillett and that he did not see what happened after he observed Henderson walk from his car to the apartment complex

8

with the gun. And by the time Aguilar saw Tillett, Tillett was already bleeding from his face. Tiffany's testimony could have filled in some of the gaps in Aguilar's testimony. In addition, the People charged Henderson not only with assault with a semiautomatic firearm, but also with assault by means likely to produce great bodily injury. Even if Tiffany testified she did not see Henderson with a gun, she may have testified she saw Henderson hit Tillett, which would have provided further evidence in support of the latter charge.

Third, in closing argument Henderson's trial counsel used Tiffany's (and Tillett's) absence from the trial to argue the People had not met their burden of proof beyond a reasonable doubt. In particular, counsel argued the People "denied" the jury the true story by failing to call the people "who know the real story about what happened" and "who know the full picture." (See *Harrington v. Richter* (2011) 562 U.S. 86, 109 [131 S.Ct. 770] ["To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates."].)

To be sure, if there were evidence Henderson's trial counsel did not even try to find and interview Tiffany, Henderson might be able to show his attorney's performance was deficient. (See *In re Gay*, *supra*, 8 Cal.5th at p. 1076 [an attorney's duty to render effective assistance includes the "'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary'"]; see, e.g., *id.* at p. 1078 [where the defendant was charged with shooting a police officer, his attorney acted unreasonably in failing to interview two witnesses who may have testified the codefendant was the shooter]; *Riley v. Payne* (9th Cir. 2003) 352 F.3d 1313, 1317-1319

9

[attorney acted unreasonably by failing to interview a witness who was with the defendant and the victim shortly before the alleged assault occurred and would have offered testimony favorable to the defendant's theory of self-defense].)  As Henderson concedes, however, the record does not indicate either way whether, let alone affirmatively show, trial counsel for Henderson attempted to locate and interview Tiffany (or, if she did, what she learned during her investigation).  (See *People v. Mayfield* (1993) 5 Cal.4th 142, 188 ["tactical choices presented to us on a silent record . . . are better evaluated by way of a petition for writ of habeas corpus, and on direct appeal we reject them"].)

> B.    *The Trial Court Did Not Have Discretion To Impose Concurrent Sentences on the Two Convictions for Assault with a Semiautomatic Firearm*

The trial court imposed consecutive sentences on count 1, assault with a semiautomatic firearm on Tillett, and count 5, assault with a semiautomatic firearm on Aguilar.  In imposing consecutive sentences for these two convictions, the court stated that, "as to count 5," the "three strikes law requires that on serious or violent felonies, two or more, that they be sentenced consecutively."

Citing *People v. Hendrix* (1997) 16 Cal.4th 508 (*Hendrix*), where the Supreme Court held "consecutive sentences are not mandated under [section 667,] subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion'" (*Hendrix,* at p. 512), Henderson argues the trial court erred in failing to recognize it had discretion to impose

10

concurrent sentences on counts 1 and 5.[4]  The People argue the trial court did not have discretion to impose concurrent sentences because Proposition 36, approved by the voters in 2012, 15 years after the Supreme Court's decision in *Hendrix*, eliminated a trial court's discretion to impose concurrent sentences and requires the court to impose consecutive sentences "where the defendant has multiple current strike convictions."  Henderson cites several cases that have agreed with his position.  (See *People v. Marcus* (2020) 45 Cal.App.5th 201 (*Marcus*); *People v. Gangl* (2019) 42 Cal.App.5th 58 (*Gangl*); *People v. Buchanan* (2019) 39 Cal.App.5th 385 (*Buchanan*); *People v. Torres* (2018) 23 Cal.App.5th 185 (*Torres*).)  In three of these cases, however, a dissenting justice agreed with the People's position.  (See *Marcus*, at p. 215 (conc. & dis. opn. of Krause, J.); *Gangl*, at pp. 72-80 (conc. & dis. opn. of Krause, J.); *Buchanan*, at pp. 392-398 (conc. & dis. opn. of Needham, J.).)

We agree with the People and the dissenting justices in *Marcus, Gangl,* and *Buchanan* that Proposition 36 eliminated the trial court's discretion to impose concurrent sentences on multiple current serious or violent felony convictions.

### 1.    Hendrix

Section 667, subdivision (c), provides in relevant part: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the

---

[4]    Henderson does not challenge the trial court's determination that his convictions on counts 1 and 5 were for serious or violent felonies under the three strikes law.  (See § 1192.7, subd. (c)(31) [defining assault with a semiautomatic firearm in violation of section 245 as a "serious felony"].)

defendant has one or more prior serious or violent felony convictions, as defined in subdivision (d), the court shall adhere to each of the following: . . . [¶] (6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count . . . . [¶] (7) If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

In *Hendrix, supra*, 16 Cal.4th 508 the Supreme Court considered whether a trial court has discretion to impose concurrent sentences under section 667, subdivision (c)(7), where the defendant is convicted of multiple serious or violent felonies the defendant committed at the same time. (*Hendrix*, at pp. 511-513.) The Supreme Court first considered the language of section 667, subdivision (c)(6), and explained that, because subdivision (c)(6) "clearly provides that consecutive sentencing is mandatory for any current felony convictions 'not committed on the same occasion, and not arising from the same set of operative facts,'" by implication "consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.'" (*Hendrix*, at pp. 512-513.)

Turning to section 667, subdivision (c)(7), the Supreme Court held that the phrase "'more than one serious or violent felony as described in paragraph (6)' refer[ed] to multiple current convictions for serious or violent felonies 'not committed on the

12

same occasion, and not arising from the same set of operative facts.'" (*Hendrix*, *supra*, 16 Cal.4th at p. 513.) Therefore, the Supreme Court held, "when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.'" (*Hendrix*, at p. 513.) Again, the Supreme Court explained that, "[b]y implication, consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.'" (*Hendrix*, at p. 513.) The Supreme Court affirmed these holdings in *People v. Deloza* (1998) 18 Cal.4th 585 and *People v. Lawrence* (2000) 24 Cal.4th 219.

2. *Proposition 36*

Before voters adopted Proposition 36 in 2012, subdivisions (c)(6) and (c)(7) of section 667 were substantially similar to subdivisions (a)(6) and (a)(7) of section 1170.12—the initiative version of the three strikes law. (See former § 1170.12, subds. (a)(6)-(a)(7), added by Prop. 184, § 1, as approved by voters Gen. Elec. (Nov. 8, 1994) and amended by Prop. 36, § 4, as approved by voters Gen. Elec. (Nov. 6, 2012); *People v. Lawrence, supra*, 24 Cal.4th at p. 222, fn. 1 ["'[t]he relevant portions of the initiative version of the three strikes law adopted by the voters in November 1994 (§ 1170.12), and the March 1994 legislative version (§ 667, subds. (b)-(i)), are virtually identical'"].)

13

Proposition 36 amended section 1170.12, subdivision (a)(7), as follows:[5]  "If there is a current conviction for more than one serious or violent felony as described in ~~subdivision (a)(6)~~ **subdivision (b)**, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."  (§ 1170.12, subd. (a)(7), as amended by Prop. 36, § 4, as approved by voters Gen. Elec. (Nov. 6, 2012).)

Section 1170.12, subdivision (b), lists the felonies that qualify as serious or violent under the three strikes law. Therefore, because subdivision (a)(7) now refers to serious or violent felony convictions "described in subdivision (b)," rather than serious or violent felony convictions "described in subdivision (a)(6)," section 1170.12, subdivision (a)(7), "now applies not only when [current] serious or violent felonies were not committed on the same occasion or did not arise from the same set of operative facts, but whenever a defendant is convicted of multiple serious or violent felonies."  (*Torres*, *supra*, 23 Cal.App.5th at p. 201; accord *Gangl*, *supra*, 42 Cal.App.5th at p. 69; see *Marcus, supra*, 45 Cal.App.5th at p. 212 [section 1170.12, "subdivision (a)(7) no longer applies only to 'serious or violent felonies "not committed on the same occasion, and not arising from the same set of operative facts,"'" but to "all cases where the current multiple felonies are serious and/or violent—

---

[5]     Strikethrough indicates deleted language; bold indicates added language.

14

even when those felonies were committed at the same time and involve the same facts"].)[6]

### 3. *Proposition 36 Eliminated a Trial Court's Discretion To Impose Concurrent Sentences on Convictions for Multiple Serious or Violent Felonies*

"We interpret statutes added or amended by voter initiative . . . in the same manner we interpret those enacted by the Legislature." (*People v. Jessup* (2020) 50 Cal.App.5th 83, 87; see *People v. Valenzuela* (2019) 7 Cal.5th 415, 423 ["In construing [an] initiative, 'we apply the same principles that govern statutory construction.'"].) "Where a law is adopted [or amended] by the voters, 'their intent governs.' [Citation.] In determining that intent, 'we turn first to the language of the statute, giving the words their ordinary meaning.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 879-880; accord, *People v. Herrera* (2020) 52 Cal.App.5th 982, 990.) "'[I]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent . . . of the voters (in the case of a provision adopted by the voters).'" (*People v. Valencia* (2017) 3 Cal.5th 347, 357; accord, *People v. Kelly* (2018) 28 Cal.App.5th 886, 897.) "[W]e presume the voters intended the meaning apparent from that language, and we may not add to the statute

---

[6] Proposition 36 did not amend the nearly identical language of section 667, subdivision (c)(7). As the court in *Torres* explained, this appears to have been an oversight. (*Torres*, *supra*, 23 Cal.App.5th at p. 202.) Because "we cannot read the electorate's change of its language as having no meaning," "the later-enacted initiative version of the law controls . . . ." (*Ibid.*)

15

or rewrite it to conform to some assumed intent not apparent from that language." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571; accord, *Herrera*, at p. 991.)

The plain language of section 1170.12, subdivision (a)(7), as amended, requires a court to impose consecutive sentences on convictions for multiple serious or violent felonies. Subdivision (a)(7) now refers to serious or violent felonies described in subdivision (b)—the provision that defines serious or violent felonies—rather than serious or violent felonies described in subdivision (a)(6). Therefore, it applies "*whether or not* those serious and/or violent felonies were committed on the same occasion and arose under the same set of operative facts." (*Marcus*, *supra*, 45 Cal.App.5th at p. 213; see *Gangl*, *supra*, 42 Cal.App.5th at p. 69; *Torres*, *supra*, 23 Cal.App.5th at p. 201.) Subdivision (a)(7) requires the court to "impose the sentence for each [serious or violent felony] conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced . . . ." Any other conviction for which the defendant may be consecutively sentenced includes the current conviction(s) for the other serious or violent felony or felonies. Therefore, "under the plain language of section 1170.12, subdivision (a)(7), consecutive sentences—including sentences consecutive to each other—must be imposed on more than one serious or violent felony" conviction. (*Buchanan*, *supra*, 39 Cal.App.5th at p. 397 (conc. & dis . opn. of Needham, J.); see *Gangl*, at p. 79 (conc. & dis. opn. of Krause, J.) ["when a defendant is convicted of more than one current serious or violent felony," subdivision (a)(7) "mandates that each serious or violent felony conviction be sentenced 'consecutive to the sentence for any other conviction for which the defendant may be

16

consecutively sentenced . . . ,' including any other serious or violent felony"].)  As a leading treatise on California sentencing law explained:  "The amendment to section 1170.12(a)(7) appears to abrogate *Hendrix* as to serious and violent crimes. . . .  The change now requires the court to sentence multiple current serious or violent felonies consecutively, *whether or not* they occurred on the same occasion or out of the same set of operative facts."  (Couzens et al., California Three Strikes Sentencing (The Rutter Group 2018) § 8:1.)[7]

The court in *Torres* and the majority opinions in *Buchanan, Gangl, and Marcus* interpreted amended subdivision (a)(7) of section 1170.12 differently.  According to these courts, subdivision (a)(7) requires only that "*other crimes* must be sentenced consecutively to the serious and/or violent felonies sentenced either consecutively or concurrently" under subdivision (a)(6).  (*Marcus, supra,* 45 Cal.App.5th at pp. 212-213; see *Gangl, supra,* 42 Cal.App.5th at p. 71; *Torres, supra,* 23 Cal.App.5th at p. 201.)  But, according to these opinions, Proposition 36 did not implicitly overrule *Hendrix,* and trial courts still have "discretion to sentence serious and/or violent felon[y convictions] concurrently" under subdivision (a)(6).  (*Marcus,* at p. 213; see *Gangl,* at p. 71; *Torres,* at p. 201.)

The problem with this interpretation is that it is not what section 1170.12 says.  Before the voters adopted Proposition 36, section 1170.12, subdivision (a)(7), applied to multiple serious or

_____

[7]     The current version of the treatise acknowledges the holding of *Torres* "[n]otwithstanding the amendment" to section 1170.12, subdivision (a)(7).)  (Couzens et al., California Three Strikes Sentencing (2019 supp.) § 8:1.)

17

violent felony convictions "as described by subdivision (a)(6)"—i.e., multiple serious or violent felony convictions not committed on the same occasion and not arising from the same set of facts. Therefore, the Supreme Court's holding in *Hendrix* that courts had discretion to impose concurrent sentences when the defendant committed the felonies on the same occasion or the felonies arose from the same set of facts was consistent with subdivisions (c)(6) and (c)(7) of section 667 and subdivisions (a)(6) and (a)(7) of section 1170.12. But because the voters amended subdivision (a)(7) to refer to felonies described in subdivision (b)—i.e., serious and violent felonies—rather than felonies described in subdivision (a)(6), subdivision (a)(7) now requires the court to impose consecutive sentences on convictions for any and all serious or violent felonies. (See *People v. Santa Ana* (2016) 247 Cal.App.4th 1123, 1142 ["'[a]s a general rule, in construing statutes, "[w]e presume the Legislature [or, here, the electorate] intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version"'"]; see also *People v. Mendoza* (2000) 23 Cal.4th 896, 916.) When the voters amended section 1170.12, subdivision (a)(7), they did not include an exception that would allow the court to impose concurrent sentences on felony convictions that fall outside the scope of section 1170.12, subdivision (a)(6). The voters could have approved such an exception, but they did not, and we cannot add it. (See *Johnson v. County of Mendocino* (2018) 25 Cal.App.5th 1017, 1031 ["[w]e cannot add to the initiative a [new provision], in the guise of legal interpretation"]; *People v. Roach* (2016) 247 Cal.App.4th 178, 184 ["to construe [Proposition 47] in the manner appellant requests would require this court to *insert* new

language into the statute," and "[e]ven assuming the result appellant urges would better further the intent of the voters, this court cannot add to the statute on that basis"].)[8]

In *Hendrix* the Supreme court held that section 667, subdivision (c)(6), "applies to *any* current felony conviction," whether or not the felony is serious or violent. (See *Hendrix, supra*, 16 Cal.4th at p. 512.) The court in *Torres* reasoned that, because "no change was made to the language of section 1170.12, subdivision (a)(6)," the voters must have intended that courts "retain discretion to impose concurrent sentences for felonies (including serious and/or violent felonies) committed on the same occasion or arising from the same set of operative facts." (See *Torres, supra*, 23 Cal.App.5th at pp. 200-201.) The majorities in *Gangl* and *Marcus* adopted similar reasoning. (See *Marcus, supra*, 45 Cal.App.5th at p. 211 ["Proposition 36 did not amend section 1170.12, subdivision (a)(6), and therefore, as held by *Hendrix* in its analysis of the parallel provision–subdivision (c)(6) of section 667–subdivision (a)(6) continues to apply to *all* felonies"]; *Gangl, supra*, 42 Cal.App.5th at p. 69 ["Notably, the *Hendrix* court first determined that all felonies must be sentenced under section 667, subdivision (c)(6) before it ever considered the meaning of section 667, subdivision (c)(7)."].)

---

[8] As the dissenting justice in *Gangl* observed, the voters could have amended section 1170.12, subdivision (a)(7), to read, for example: If there is a current conviction for more than one serious or violent felony as described in subdivision (b), the court shall impose the sentence for each such serious or violent felony conviction concurrently or consecutively under subdivision (a)(6), and then impose the sentence for any other conviction consecutively. (See *Gangl, supra*, 42 Cal.App.5th at p. 78 (conc. & dis. opn. of Krause, J.).)

It is true that section 1170.12, subdivision (a)(6), previously applied and continues to apply to all felonies. But the court in *Torres* assumed, incorrectly in our view, that because the voters did not amend subdivision (a)(6), they intended courts to retain discretion to impose concurrent sentences on multiple serious or violent felony convictions. This assumption ignores the actual language of subdivisions (a)(6) and (a)(7) and the relationship between the two provisions. (See *People v. Murphy* (2001) 25 Cal.4th 136, 142 ["[w]e do not . . . consider the statutory language 'in isolation,'" but instead "look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision'"]; *People v. Santa Ana*, *supra*, 247 Cal.App.4th at p. 1141 [same]; see also *Gangl*, *supra*, 42 Cal.App.5th at p. 68 ["we cannot read section 1170.12, subdivision (a)(7) in isolation of the entire section in which it exists," but "must read it in the context of the preceding subdivision"].)

As Justice Mosk explained in his concurring opinion in *Hendrix*, section 667, subdivision (c)(6), provides a "general" rule that applies to "all felonies" (as does section 1170.12, subdivision (a)(6)). (*Hendrix*, *supra*, 16 Cal.4th at p. 518 (conc. opn. of Mosk, J.).) Subdivisions (c)(6) of section 667 and (a)(6) of section 1170.12 require a court to impose consecutive sentences on convictions for felonies that the defendant did not commit on the same occasion and that do not arise from the same set of facts. The rule applies regardless of whether the felonies are serious or violent. Section 1170.12, subdivision (a)(7), adds an additional requirement for one subset of felonies: serious and violent ones. (See *Hendrix*, at p. 518 (conc. opn. of Mosk, J.) [describing section 667, subdivision (c)(7), as a "special" rule "for only 'serious or violent felon[ies]'"].) For convictions for serious or violent felonies

20

only, amended section 1170.12, subdivision (a)(7), separately requires that the court impose the sentences consecutive to the sentences on other crimes (including each other), regardless of whether the court otherwise would have discretion to impose concurrent sentences.  As the dissenting justice in *Gangl* stated: "Concluding that consecutive sentences are (or are not) mandatory under paragraph (6) says nothing about whether they are mandatory under amended paragraph (7).  The two subdivisions exist in harmony as separate consecutive sentencing provisions." (*Gangl*, *supra*, 42 Cal.App.5th at pp. 77-78 (conc. & dis. opn. of Krause, J.), fn. omitted.)  The voters did not need to amend the general rule of subdivision (a)(6), which continues to apply to all felonies, to create the specific rule of subdivision (a)(7), which applies only to certain felonies.

The majority in *Gangl* also reasoned that its interpretation of section 1170.12, subdivision (a)(7), was consistent with the Official Voter Information Guide of Proposition 36.  So is ours.  Although where, as here, the statutory language "'is clear and unambiguous,'" there is no need "'to resort to indicia of the intent . . . of the voters'" (*People v. Valencia*, *supra*, 3 Cal.5th at p. 357), the extrinsic evidence of voter intent in approving Proposition 36 supports our interpretation.  Nothing in the Official Voter Information Guide suggests the voters intended courts to retain discretion to impose concurrent sentences on convictions for serious or violent felonies.  Nor is there any mention of the Supreme Court's holding in *Hendrix* or any discussion (other than the proposed amendments to the Penal Code) of concurrent or consecutive sentences.  Moreover, the Legislative Analyst described the purposes of Proposition 36 as "reduc[ing] prison sentences served under the three strikes law

21

by certain third strikers whose current offenses are nonserious, non-violent felonies." (Ballot Pamp., Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by the Legislative Analyst, p. 49.) The proponents of Proposition 36 argued that "[c]riminal justice experts and law enforcement leaders carefully crafted Prop. 36 so that truly dangerous criminals will receive no benefits whatsoever from the reform" and that "[t]he Three Strikes law will continue to punish dangerous career criminals who commit serious violent crimes—keeping them off the streets . . . ." (Ballot Pamp., Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52; see *People v. Johnson* (2015) 61 Cal.4th 674, 686 [Proposition 36 "reflect[s] an intent to 'make the punishment fit the crime' and 'make room in prison for dangerous felons'"].) Requiring a court to impose consecutive sentences where the defendant is convicted of multiple serious or violent felonies, rather than leaving sentencing to the trial court's discretion, is consistent with these stated purposes of Proposition 36.

## DISPOSITION

The judgment is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


DILLON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.