Filed 3/27/26  P. v. Maynard CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C101665 |
| Plaintiff and Respondent, | (Super. Ct. No. CR2021-3587) |
| v. | |
| AZEL SINCLAIR MAYNARD, | |
| Defendant and Appellant. | |

Defendant Azel Sinclair Maynard assaulted his brother's roommate and, after a jury trial, was convicted of five felony counts, including attempted rape and dissuading a witness.  He now challenges the legality of those convictions as well as his sentence.  We agree that Maynard's sentence on count 5 should be vacated, although not for the reasons he contends.  We otherwise affirm the judgment.

LEGAL AND FACTUAL BACKGROUND

One night in December 2021, Crystal L. was at home with her four-year-old son.  Her roommate, Maynard's brother, was not home.  The roommate was an intermittent resident; he slept on the couch or a spare bed three or four times per week.  Crystal and

1

the roommate had known each other for a long time, but she had never met any of the roommate's family.

At around 9:00 p.m., Crystal was in the living room while her son slept in her bedroom. She answered a knock at the door and found Maynard, whom she had never seen before. She asked him if he was there to see the roommate and he answered affirmatively. Crystal let Maynard in and went to the bedroom she believed was occupied by the roommate. As she did so, Maynard walked past her and into the bathroom at the end of the hallway. When Crystal realized that the roommate was not home, she became nervous about letting a stranger into her home. She went to her bedroom to be near her son and to call the roommate. While she was on the phone, Maynard came out of the bathroom and appeared "kind of scattered" with "shifty eyes." She told him she was trying to contact the roommate.

When she was unable to reach the roommate, she told Maynard that the roommate was not there and asked him to "please leave." Maynard did not leave. Crystal screamed as loud as she could, hoping to get the attention of her neighbor. Maynard immediately stepped forward, put his hand over her mouth, and he either tackled her to the ground or she fell during the ensuing struggle. Maynard pinned Crystal to the ground on her stomach. She resisted and tried to scream but Maynard pushed her face into the carpet with one hand while he tried to stop her from kicking and elbowing him with his other arm. Over her clothes, Maynard then rubbed her thigh, asking her if she liked it, then rubbed her vagina. Maynard then put his hands inside her pants and underwear; Crystal could feel his skin on hers. Crystal testified that Maynard's "hands go to rubbing on my vagina on the outside of it, though. There was no penetration." She clarified that his fingers did not go inside her vaginal canal but rubbed against the labia and "[v]ery slightly" between the "vaginal lips." At that point, her son awoke and began crying.

Maynard continued rubbing Crystal's vagina while she pleaded with him to stop. She told him something to the effect of, "I won't fight you. I just don't want you to do

2

this in my bedroom because I [do not] want my son to be scarred." Maynard removed his hand from her pants and Crystal was able to get up off the floor. She picked up her son and with a combination of small talk and subterfuge, she was able to position herself close enough to the front door to run outside. As she did, however, Maynard shoved the door into her ankle. Once outside, she screamed for help. Her neighbors came and Maynard ran outside and drove away. Crystal had a cut on her nose that bled "pretty bad," bruises on her arms, face, legs, ankle and foot, and her body was sore for at least a week. She also lost her voice from screaming. She later learned that her attacker was the roommate's brother.

Maynard testified at trial. He denied ever touching Crystal and testified that he fell asleep waiting for the roommate and when the roommate did not return home, he left.

Maynard admitted that he suffered the following prior convictions: first degree burglary in 2006; felony fraud and second degree burglary in 2012; and felony evasion in 2016. He also admitted that he had a pending case for a robbery in 2021.

The jury found Maynard guilty of assault with intent to commit rape, sodomy, oral copulation, or penetration by a foreign object during the commission of a first degree burglary (Pen. Code, § 220, subd. (b); count 1),[1] first degree burglary (§ 459; count 2), attempted rape by force or fear (§§ 21a, 261, subd. (a)(2), 664, subd. (a); count 3), dissuading a witness (§ 136.1, subd. (c)(1); count 4), and sexual battery (§ 243.4, subd. (a); count 5). The jury also found true the allegation that a person was present during the burglary charged in count 2.

In a subsequent bifurcated hearing, Maynard admitted several enhancements: that he previously suffered two prior strike convictions (§ 667, subd. (e)(2)); that he was a habitual criminal (§ 667, subd. (a)(1)); and that he was on bail at the time he committed

---

[1]     Undesignated statutory references are to the Penal Code.

these felonies (§ 12022.1, subd. (b)).  The trial court also found true additional alleged factors in aggravation (§ 1170, subd. (b)).  The trial court sentenced Maynard to 25 years to life in prison on counts 1 through 4, stayed the sentences on counts 2 through 4 pursuant to section 654, and imposed a consecutive determinate prison term of 12 years reflecting the section 667 and section 12022.1 enhancements.  On count 5, the court also imposed the upper term of four years, doubled due to prior strike offenses, and stayed execution of that sentence pursuant to section 654.

Maynard timely appealed.

DISCUSSION

I

Substantial Evidence of the Attempted Rape

Maynard contends the attempted rape conviction was not supported by substantial evidence because there was no evidence he intended to have sexual intercourse with Crystal.  The People disagree, as do we.

In evaluating a challenge to the sufficiency of the evidence, we review the record " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)  " 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*Ibid*.)

Maynard was charged with attempted forcible rape.  Forcible rape is defined as an act of sexual intercourse accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.  (§ 261, subd. (a)(2).)  " 'An attempt to commit rape has two elements: the specific intent to commit

4

rape and a direct but ineffectual act done toward its commission.' [Citation.] Intent to commit forcible rape requires (1) the intent to commit the act of sexual intercourse; (2) against the will of the victim [citation]; (3) by any of the means described in section 261, subdivision (a)(2)." (*People v. Lee* (2011) 51 Cal.4th 620, 633.) Such act must constitute direct movement beyond preparation that would have accomplished the rape if not frustrated by extraneous circumstances. (*Ibid*.)

"The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act." (*People v. Duke* (1985) 174 Cal.App.3d 296, 300.) " 'In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken.' " (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597 (*Craig*).)

Here a rational trier of fact could have found that the evidence demonstrated Maynard's intent to forcibly rape Crystal. When Maynard entered Crystal's home and walked past her to the bathroom at the end of the hall, he did not encounter anyone else in the house. When he returned from the bathroom, he appeared "kind of scattered" with "shifty eyes." When it became clear that no other adult was in the house and that Crystal wanted him to leave, he refused to do so. When she began to scream, Maynard immediately put his hand over her mouth, and she forcefully ended up on the ground with him on top of her. At that point, it was clear that whatever Maynard wanted, it would have to be obtained without her consent. And there was substantial evidence that he wanted sexual intercourse.

Maynard pinned Crystal to the ground on her stomach. He pushed her face into the carpet with one hand and with the other arm he tried to stop her from kicking and elbowing him. Maynard first rubbed her thigh and vagina over her clothes while asking her if she liked it, then put his hands inside her pants and underwear; Crystal could feel his skin on hers. Maynard continued and went "[v]ery slightly" between the "vaginal

5

lips." Crystal's son then woke up and began crying, consequently frustrating Maynard's actions.

Maynard contends that this evidence only allowed a jury to infer that he had the specific intent to digitally penetrate Crystal in violation of section 289—not that he wanted to have sexual intercourse with her. We disagree. Nothing Maynard did or said indicated that he only intended to digitally penetrate Crystal and would stop short of sexual intercourse. Indeed, he had already completed the crime of digital penetration as proscribed by section 289 when his actions were interrupted by Crystal's son. (See *People v. Harrison* (1989) 48 Cal.3d 321, 329 ["a violation of section 289 is 'complete' the instant 'slight' 'penetration' of the proscribed nature occurs"].) The fact that he then refused to stop or let Crystal up—despite her pleas—allowed the jury to infer that his act of digital penetration was an overt act to further his intent to have sexual intercourse with her. Although Maynard correctly asserts that there was no evidence about his physical readiness to penetrate her with his penis, that is immaterial where, as here, the assault was in the beginning stages. The overt act " 'need not be the last proximate or ultimate step towards commission of the substantive crime.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 453; see *id*. at p. 455 ["the law of attempts would be largely without function if it could not be invoked until the trigger was pulled, the blow struck, or the money seized" and "when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is underway"].) And if the jury believed the prosecution had proven beyond a reasonable doubt that Maynard committed sexual battery, as charged in count 5, the jury was permitted to conclude that Maynard was disposed or inclined to commit the attempted rape. (CALCRIM No. 1191B.)

The circumstances of this offense, and the arguments made on appeal, are not unlike those in *Craig, supra*, 25 Cal.App.4th 1593. In *Craig*, a woman getting out of her car was assaulted from behind. The defendant shoved her back into the car and told her not to look at him. He then shoved his hand up her shirt and touched her breasts. The

woman's roommate came out to the car and pulled the defendant off the woman. The defendant was subsequently arrested and convicted of assault with intent to commit rape. (*Id*. at pp. 1595-1596.) On appeal, the defendant admitted the jury could find he intended " 'something sexual' " but that the evidence fell short of showing he intended to have sexual intercourse. (*Id*. at p. 1597.) The appellate court disagreed, reasoning in part that from the "entire melange of circumstances shown by the evidence" the jury could infer that the defendant assaulted her with the specific intent to commit rape. (*Id*. at p. 1604.) "All of his conduct was consistent with that intent. Nothing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse." (*Ibid*.) The circumstances here are even more egregious. Maynard forcefully pinned Crystal's face into the carpet and restrained her attempts to resist while he rubbed her vagina. He asked her if she liked it then put his hand inside her underwear to digitally penetrate her. His use of force and escalating violative behavior was consistent with an intent to eventually rape her.

In short, substantial evidence supports the jury's verdict. "While other reasonable inferences also might be drawn, it was for the jury, not us, to draw them." (*Craig, supra*, 25 Cal.App.4th at p. 1604 [rejecting the argument that proof that a defendant intended " 'something sexual' " was insufficient to prove intent to rape].)

II

Theory of Witness Dissuasion

The trial court instructed the jury that Maynard could be found guilty of preventing or dissuading a victim in violation of section 136.1 when he either covered Crystal's mouth (at the start of the assault) or when he tried to prevent Crystal from exiting the front door by slamming the door on her ankle.[2] Maynard contends that the

---

[2]     The jury was also instructed that it had to be unanimous as to which theory of witness intimidation, if any, Maynard committed. While Maynard has no quarrel with

7

witness dissuasion statute only applies to an attempt to dissuade a report of a *past* crime but does not apply to an attempt to prevent a victim from seeking help during an *ongoing* crime. Thus, Maynard asserts that the theory that he violated the statute by covering her mouth and preventing her scream while the crime unfolded was invalid as a matter of law and the trial court erred in so instructing the jury.

We review a question of statutory construction de novo. (*People v. Shah* (2023) 96 Cal.App.5th 879, 894.) " ' "In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment." ' " (*Id*. at p. 895.) " 'We look first to "the words of the statute, which are the most reliable indications of the Legislature's intent." ' " (*Ibid*.) " 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.) "We decline to insert any additional restrictions into an otherwise unambiguous provision." (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 85.) We construe the language of the statute "in its full statutory context, keeping in mind the nature and purposes of the statutory scheme as a whole." (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087.)

As relevant here, subdivision (b) of section 136.1 provides:[3] "[A] person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . : [¶] (1) Making a report of that victimization to a peace officer, a state or local law enforcement officer, a probation, parole, or correctional officer, a prosecuting agency, or

---

the theory of dissuasion based on preventing Crystal from leaving, he correctly notes the verdict does not indicate with which theory the jury agreed.

[3]    Effective January 1, 2026, section 136.1 was amended. These amendments reflect a preference for the use of "a" instead of "every" or "any" and do not substantively modify the elements of the offense.

a judge." Violation of section 136.1, subdivision (b), is a wobbler, chargeable as a misdemeanor or a felony. (*People v. Reyes* (2020) 56 Cal.App.5th 972, 982 (*Reyes*).) It was charged here as a felony, under subdivision (c)(1), which defines the aggravated form of the crime as: "A person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances . . . : [¶] (1) If the act is accompanied by force or by an express or implied threat of force or violence, upon a witness, [or] victim . . . ." (§ 136.1, subd. (c)(1).)

Several years ago, the First District was called upon to decide whether section 136.1, subdivision (b)(1) applies only to dissuasion of reports about completed crimes or if it also encompasses future crimes as well. (*Reyes, supra*, 56 Cal.App.5th at pp. 982-983.) In that case, the defendant was accused of impersonating a district attorney and instructing a victim to call him and not the police, should her abuser come to her house in the future. (*Id*. at pp. 977-978.) The defendant argued that he could not be held to answer on a charge of violating section 136.1, subdivision (b)(1) because the statute does not prohibit dissuading the report of future crimes. (*Reyes*, at pp. 983-984.) According to that defendant, "section 136.1, subdivision (b), covers dissuasion of 'another person who has been the victim of *a crime* or who is witness to *a crime*' (§ 136.1, subd. (b), italics added) from '[m]aking any report of *that victimization*' (*id*., subd. (b)(1), italics added). According to [the defendant] Reyes, the repeated reference in section 136.1, subdivision (b), to 'a crime'—which suggests the statute is concerned with reporting a discrete event—together with the structure of the operative sentence in section 136.1, subdivision (b), indicates that the antecedent for the key phrase 'that victimization' is an already completed crime known to a witness or victim." (*Reyes*, at p. 984.) The appellate court ultimately concluded that section 136.1, subdivision (b)(1) was ambiguous as applied to the record before it, that it faced "one of those rare cases where the rule of lenity applie[d]" and it held that section 136.1, subdivision (b)(1) did not apply to that case. (*Reyes*, at p. 989.)

9

Maynard urges us to adopt *Reyes*'s interpretation of the statute or find that the rule of lenity applies to him as it did to Reyes. But in *Reyes*, the court was ultimately concerned with whether the statute proscribed dissuading a witness from reporting a future crime—the commission of which was only speculative. (*Reyes, supra*, 56 Cal.App.5th at p. 987.) The question presented here is whether the language of the statute proscribes dissuading a witness from reporting an ongoing crime. Thus, *Reyes* is only marginally helpful.

Maynard further contends that the ambiguities in section 136.1 were recently noted by the California Supreme Court, which, in analyzing a different subdivision of section 136.1, also applied the rule of lenity. (See *People v. Reynoza* (2024) 15 Cal.5th 982, 990.) But in *Reynoza*, the narrow issue of statutory construction before the Supreme Court was whether section 136.1, subdivision (b)(2) "requires proof of an attempt to dissuade a witness from *causing* a charging document to be sought and prosecuted . . . or whether the statute *also* independently applies where a defendant dissuades a witness only from '*assisting* in the prosecution' of a case *after* the charging document has already been filed." (*Reynoza*, at p. 989, first three italics added.) The issue here is different.

Maynard also acknowledges that two years after *Reyes* was decided, that same court rejected an argument that a violation of section 136.1, subdivision (b)(1) requires that a witness be prevented from reporting a completed crime, not an " 'ongoing' " crime. (*People v. Sherman* (2022) 86 Cal.App.5th 402, 413 (*Sherman*).) Without providing his own analysis, Maynard simply contends that "*Sherman* wrongly rejects the *Reyes* defendant's position for the reasons explained in *Reyes*." We disagree.

In *Sherman*, the defendant posed as a ride-share driver and pretended to take the victim to her destination. (*Sherman, supra*, 86 Cal.App.5th at pp. 405-406.) During the ride, the defendant charged the victim's phone in the front seat and did not comply with her request to return it. When he finally pulled over, he lunged into the backseat and assaulted the victim. The victim retrieved her phone, but the defendant said he was not

10

going to let her have it and turned it off. (*Id*. at p. 406.) The defendant again pretended to drive the victim to her destination and she eventually escaped. (*Id*. at pp. 406-407.) Based upon the evidence that the defendant prevented the victim from obtaining her phone when she asked for it, and when she did retrieve her phone, taking it from her and turning it off, the defendant was convicted of, inter alia, witness dissuasion in violation of section 136.1, subdivision (b)(1). (*Sherman*, at p. 409.)

On appeal, the defendant contended that dissuading a witness from reporting an ongoing crime fell outside the scope of the statute. (*Sherman, supra*, 86 Cal.App.5th at p. 413.) According to the defendant, because he was still victimizing the victim when he prevented her from using her phone, those prevention efforts were not proscribed by section 136.1. The appellate court rejected this argument. (*Sherman*, at p. 413.) The court noted that "it will often be reasonable for a jury to conclude that, by preventing a victim from contacting the police to seek help during an ongoing crime, the defendant prevented the victim from reporting her victimization." (*Id.* at p. 414.) And, the court concluded, the statute "does not uniformly use the past tense to describe the underlying crime the reporting of which the defendant must have sought to prevent" and "the applicable definition of ' "[v]ictim" ' does not limit its coverage to a person who was victimized in the past[;] [citation] [i]nstead, it includes a person 'with respect to whom there is reason to believe that any crime . . . *is being* or has been perpetrated or attempted to be perpetrated.' " (*Id*. at p. 416, italics added.) The court explained, "*Reyes* does not support the defendant's argument that section 136.1, subdivision (b)(1) cannot apply to an attempt to prevent a victim from calling the police during an ongoing crime such as an assault." (*Id*. at p. 413.) We find *Sherman*'s analysis persuasive and conclude that the plain language of section 136.1, subdivision (b)(1) may apply to concurrent or ongoing crimes and does not exclusively apply to discrete crimes committed in the past.

As further support for this conclusion, the facts of this case and those in *Sherman* illustrate the absurd results if we were to conclude otherwise. (See *People v. Mendoza*

11

(2000) 23 Cal.4th 896, 908 [while interpreting a statute, "[w]e must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend"].) Here, Maynard began his criminal activity by refusing to leave at Crystal's request, then ramped up his criminality when she fell to the ground and he proceeded to sexually assault her. And in *Sherman*, the defendant committed multiple crimes at or near the time he prevented the victim from using her phone then continued to hold her captive in his car. (See *Sherman, supra*, 86 Cal.App.5th at pp. 406-407.) If we were to conclude the Legislature sought only to proscribe any dissuasion *after* the defendant was able to *complete* the victimization, but not *during* the victimization, such an interpretation would be at odds with our state Constitution, which provides expansive rights to victims of crime. (See Cal. Const., art. I, § 28 [stating that the rights of victims of crime are "of grave statewide concern," "pervade the criminal justice system" and victims are "entitled to have the criminal justice system view criminal acts as serious threats to the [public] safety"].) Indeed, as noted by the court in *Reyes*, the "purpose of section 136.1 . . . is to promote cooperation with law enforcement by criminalizing the conduct of those who seek to short-circuit investigatory efforts by dissuading victims and witnesses from reporting crime[s]." (*Reyes, supra*, 56 Cal.App.5th at p. 985.) We conclude that applying section 136.1 to ongoing crimes is consistent with that purpose.

Accordingly, we disagree that the theory of witness dissuasion at issue was invalid.

### III

### Jury Trial on Aggravating Sentencing Factors

"Under California law, most felonies carry a 'determinate' prison sentence consisting of one of three possible terms, designated the lower, middle, and upper terms." (*People v. Nguyen* (1999) 21 Cal.4th 197, 201.) The middle term is presumed to be the appropriate punishment unless there are circumstances in mitigation or aggravation of the crime. (See § 1170, subds. (a)(1), (b)(1); *People v. Hilburn* (2023) 93 Cal.App.5th 189,

12

203-205.)  Rule 4.421 of the California Rules of Court provides a list of aggravating circumstances that must be "stipulated to by the defendant" or determined "beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)

This provision is subject to constitutional limitations under the Sixth Amendment.  Specifically, there is a constitutional right to a jury trial on "all aggravating facts, other than a prior conviction, relied upon to justify an upper term sentence."  (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078.)  Under the Fifth and Sixth Amendments to the federal Constitution, "a judge may 'do no more . . . than determine what crime, with what elements, the defendant was convicted of.' "  (*Erlinger v. United States* (2024) 602 U.S. 821, 838.)  A waiver of this right must be personally expressed by the defendant in open court.  (Cal. Const., art. I, § 16.)  The waiver must be explicit " 'and will not be implied from a defendant's conduct.' "  (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166; accord, *People v. French* (2008) 43 Cal.4th 36, 47.)

A.  Additional Background

In this case, the prosecution alleged six aggravating circumstances designated case enhancements A through F for every count.  Case enhancement F is pleaded in the language of California Rules of Court, rule 4.421(a) and (b):

"The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness.  [¶] . . The victim was particularly vulnerable.  [¶]  . . . [The defendant] took advantage of a position of trust or confidence to commit the offense.  [¶] . . . [¶]  . . . [The defendant] has engaged in violent conduct [that] indicates a serious danger to society.  [¶]  . . . [The defendant]'s prior convictions as an adult . . . are numerous or of increasing seriousness.  [¶]  . . . [The defendant] has served a prior prison term.  [¶]  . . . [The defendant]'s prior performance on probation or parole was unsatisfactory.  [¶]  . . . Any other factors

statutorily declared to be circumstances in aggravation are: [¶] . . . [the defendant] committed the offense in the presence of a minor."

Prior to Maynard's jury trial, the parties discussed how to proceed with the sentencing allegations. Defense counsel represented that Maynard wished to waive his right to a jury trial and planned to admit the allegations that he suffered the previous convictions as alleged. The following exchange took place.

THE COURT: "Mr. Maynard, you have a right to a jury trial regarding these case enhancements. They include Case Enhancement A, which is two prior strike offenses— the Solano County 2005 burglary in the first-degree, and robbery from 2011, date of conviction, from Solano. And you also have an enhancement—that—that would—that would be the enhancement that's leading to life terms; is that correct, [prosecutor]? [¶] . . . [¶]

"[PROSECUTOR]: Yes, Your Honor.

"THE COURT: And the case enhancement is a five-year enhancement for a prior robbery conviction. Okay. And then you have another case enhancement for the previous conviction that adds five years. So that's what Case Enhancement B and C do. Case Enhancement D is because you committed a felony on—while you were on bail. [¶] . . . [¶] . . . And then Case Enhancement E we talked about earlier . . . . [¶] . . . [¶]

"THE COURT: Right. And then—and then Case Enhancement F deals with circumstances in aggravation. So, for any indeterminate terms, you could be sentenced to the upper term, the Court retains direction—excuse me—discretion on that. [¶] [Defense counsel] on these case enhancements that we just summarized, you gave a full advisement of rights as to his right to a jury trial, and it's your representation that he understands that and is waiving his right to a jury trial only on the case enhancements; is that right?

"[DEFENSE COUNSEL]: That's correct, Your Honor.

"THE COURT: And, Mr. Maynard, do you agree?

14

"[MAYNARD]: Yes, Your Honor.

"THE COURT: Okay. Do you have any questions for me regarding waiving you[r] right to a jury trial on these enhancements only?

"[MAYNARD]: Not at this time."

Maynard contends his waiver of his right to a jury trial on the aggravating factors was not knowing and intelligent.

B. Analysis

The above referenced waiver took place in March 2024. At that time, section 1170, subdivision (b) required a jury trial on aggravating factors except that the court could consider a defendant's prior convictions in sentencing a defendant, without submitting that issue to the jury. (§ 1170, subd. (b)(2) & (3).) Three months later, in *Erlinger v. United States, supra*, 602 U.S. 821, the United States Supreme Court broadened the scope of sentencing factors that must be submitted to a jury to include underlying facts related to prior convictions. The next year, the California Supreme Court held that "a jury [must] determine whether the particular details of a defendant's criminal history establish an unsatisfactory probation performance or demonstrate convictions of increasing seriousness, before a trial court can rely on those facts to justify an upper term sentence." (*People v. Wiley, supra*, 17 Cal.5th at p. 1078.) Maynard contends that because the opinion in *Erlinger* was issued after he waived his right to a jury trial on the alleged aggravating sentencing factors, his waiver cannot be deemed to be intelligent and voluntary. We disagree.

" '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' " (*People v. Sivongxxay, supra*, 3 Cal.5th at p. 166.) "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."

15

(*United States v. Ruiz* (2002) 536 U.S. 622, 629.) Here, the trial court advised Maynard of his general right to a jury trial on aggravating factors and then discussed each case enhancement individually within the context of his right to a jury trial. Case enhancements A through F contained sentencing factors for which Maynard was entitled to a jury trial (such as whether the victim was vulnerable or the crime involved great violence) as well as factors that, at that time, could have been considered within the scope of the court's authority to consider without submitting it to a jury (i.e., facts relating to his prior convictions). However, the waivers made no such distinction. Indeed, the court expressly asked Maynard whether he waived a jury trial as to each case enhancement A through F and Maynard specifically waived a jury trial as to each of them. We find no infirmity in the waiver.

IV

Unauthorized Sentence

Prior to trial, the court permitted the prosecution to amend the information to allege that Maynard had two prior strike convictions and that if convicted of violating sexual battery in violation of section 243.4, subdivision (a) as alleged in count 5, such conviction would require mandatory registration as a sex offender. Such a conviction would therefore subject Maynard to an indeterminate sentence under section 667, subdivision (e)(2)(C)(ii).

During the subsequent jury waiver colloquy, the court stated, "And then Case Enhancement E we talked about earlier, which turns Count 5 into a strike offense and allows—presumably that makes Count 5 a lifetime as well?" Both the prosecutor and defense counsel answered affirmatively and defense counsel added, "I believe that would make it a strike, Your Honor."

Although the jury found Maynard guilty of sexual battery and Maynard admitted the two prior strikes and the allegation in case enhancement E, the court imposed a determinate term on count 5, consistent with a second-strike sentence, stayed pursuant to

16

section 654.  We requested supplemental briefing on whether this constituted an unauthorized sentence.  Having considered the respective responses, we conclude the sentence on this conviction associated with count 5 is an unauthorized sentence that we must vacate.

The Three Strikes Reform Act of 2012, also known as Proposition 36, "limited indeterminate life sentences for nonserious, nonviolent third strike offenses.  Under the Reform Act, a defendant convicted of a nonserious, nonviolent third strike instead receives a sentence of double the term of the current felony.  (§ 1170.12, subd. (c)(1), (2)(C).)"  (*People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 849.)  However, there are some exceptions.  Section 667, subdivision (e)(2)(C)(ii) disqualifies a defendant from determinate term sentencing where the current offense is a felony sex offense subject to sex offender registration pursuant to section 290, subdivision (c).  (See also *People v. Torres* (2018) 23 Cal.App.5th 185, 194 [requiring, under a statute identical to § 667, subd. (e)(2)(C)(ii), the defendant to be sentenced as third-striker because the prosecution " 'ple[d] and prove[d]' " that the " 'current offense [sexual battery] is a felony sex offense' " mandating " 'registration as a sex offender pursuant to subdivision (c) of Section 290' "].)

Both parties agree that pursuant to section 667, subdivision (e)(2)(C)(ii), the trial court was *required* to impose an indeterminate 25-year-to-life term on count 5.

They disagree, however, on whether the court's failure to impose a 25-year-to-life sentence on count 5 resulted in an authorized sentence.  Maynard contends it is not unauthorized because another way to view the sentence is as an exercise of discretion by the court to strike one of Maynard's prior strike convictions as to count 5 only.  He acknowledges that the court expressly denied his motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, but contends that by imposing a term consistent with a second-strike sentence, the court implicitly decided to strike one of the prior strike convictions as to count 5 only.  We are not persuaded.

17

The record demonstrates that the court denied his *Romero* motion finding, in part, "there are no overwhelming and compelling mitigation factors with respect to this crime or with respect to the defendant that take us outside the three strikes law." Although the court imposed a term consistent with a second-strike sentence, there is no indication this was an act of leniency. Rather, based on the lack of express indication the court was deviating from its prior comments, we conclude the trial court imposed an unauthorized sentence and we thus vacate the sentence imposed on count 5. (See *People v. Salazar* (2023) 15 Cal.5th 416, 428 ["the Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion"].)

The parties agree, as do we, that the proper remedy is to remand the cause for a new sentencing hearing consistent with the "Three Strikes" law. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 ["the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion' "].)

V

Administrative Errors

In light of our decision to remand the matter for a full sentencing hearing, we need not address the parties' remaining contention that certain administrative errors must be corrected in the record. These include modifying the minute order (but not the abstract of judgment) reflecting the judgment to conform to the trial court's oral pronouncement of imposition of a restitution fine of $300 pursuant to section 1202.4, subdivision (b), and a parole revocation fine of $300 pursuant to section 1202.45. These also include whether and how the enhancements for the two "nickel priors" pursuant to section 667 and the

two-year on-bail enhancement pursuant to section 12022.1, subdivision (b) should be listed on the determinate or indeterminate abstract of judgment. Because Maynard can raise these issues at the resentencing hearing, we need not address them here.

DISPOSITION

The sentence is vacated and the matter is remanded to the trial court with directions to conduct a full resentencing hearing. The judgment is otherwise affirmed.


/s/<br>
_____<br>
EARL, P. J.

We concur:


/s/
_____
DUARTE, J.


/s/
_____
WISEMAN, J.*

<hr>

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.